35 So.2d 559

ATLANTA, BIRMINGHAM & COAST R. CO. v. CARY.

6 Div. 663.

Supreme Court of Alabama.

May 20, 1948.

Motion to Amend Judgment of Affirmance Denied June 10, 1948.

Jackson, Rives & Pettus, of Birmingham, for appellee.

Graham, Bibb, Wingo & Foster, of Birmingham, for appellant.

GARDNER, Chief Justice.

The suit is under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., and that it was properly so brought and the cause of action correctly stated in the count upon which the case was submitted to the jury, does not appear to be here questioned.

There was judgment for the plaintiff, from which defendant prosecutes this appeal. Motion for a new trial was overruled.

The entire argument of appellant is rested upon the theory of an insufficiency of the evidence to make out a case for submission to the jury, and the refusal of the affirmative charge duly requested by defendant presents the only real question in the case.

In any event, if in fact a jury case was presented we would find no justification for disturbing the ruling of the court in denying the motion upon the theory that the verdict was contrary to the great preponderance of the evidence.

Nor is there insistence that the verdict is excessive. For more than two years at the time of the trial plaintiff since the accident had done no work, and moved to the country where from the proof he is unable to be of any real assistance even at the home. The jury might well find from the evidence that the injuries received were not only of a very painful nature but were of permanent character. There is no occasion, therefore, to here further relate the nature of the injury nor the detailed facts concerning it.

The record is somewhat voluminous, though not unusually so, yet to discuss it with any degree of detail would extend the opinion to undue length and in the end serve no useful purpose. We will endeavor to give a mere general outline so as to properly present the issues. There are no complicated questions of law involved, but only the application of well understood rules to the facts as presented by the record.

The case is of course governed by the federal decisions. Under these decisions the Federal Employers' Liability Act does not make the employer the insurer of the safety of the employe while on duty. And the basis of liability is the negligence of the employer, not the fact that injuries occur.

Negligence must be "in whole or in part" the cause of the injury. In one of the latest rulings the Supreme Court of the United States in Ellis v. Union Pacific Ry., 329 U.S. 649, 67 S.Ct. 598, 600, 91 L.Ed. 572, reiterated these principles and upon the matter of negligence observed that "once there is a reasonable basis in the record for concluding that there was negligence which caused the injury, it is irrelevant that fair-minded men might reach a different conclusion." And in Brady v. Southern Ry. Co., 320 U.S. 476, 64 S.Ct. 232, 235, 88 L.Ed. 239, it was observed that "an examination of the proven facts to determine whether they are sufficient to permit a verdict by the jury * * * based upon reason is of no doctrinal importance. Every case varies."

This matter of negligence must of course be established by proof and not left to mere conjecture or speculation, and it must appear that such negligence was the proximate cause, in whole or in part, of the accident. Tennant v. Peoria & P. U. Ry. Co., 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520; Tiller v. Atlantic Coast Line R. R. Co., 318 U.S. 54, 63 S.Ct. 444, 87 L.Ed. 610. All of these principles were recognized and given application by this court in Ala. Great So. R. Co. v. Davis, 246 Ala. 64, 18 So.2d 737. We have likewise examined other authorities noted in brief by counsel for appellant (among them Southern Ry. Co. v. Dickson, 211 Ala.

481, 100 So. 665; Southern Ry. Co. v. Smith, 221 Ala. 273, 128 So. 228; Southern Ry. Co. v. Carter, 164 Ala. 103, 51 So. 147; Southern Ry. Co. v. Gray, 241 U.S. 333, 36 S.Ct. 558, 60 L.Ed. 1030; Patton v. Texas & Pac. R. Co., 179 U.S. 658, 21 S.Ct. 275, 45 L.Ed. 361) but we do not consider further discussion of the authorities would be here helpful or necessary.

As to the essential facts: This was a switching crew working at night from 7 P.M. to 3 A.M., in the morning. Cary was a switchman, a field man, working at night as indicated, and one Camp, now deceased, was the head brakeman and switchman who followed the engine in these yard switching operations. There were two sets of tracks, one set known as the produce exchange tracks No. 1 and No. 2. These served the produce exchange; and house tracks No. 1 and No. 2, which served the freight house, south of the produce exchange tracks. Entry to these tracks was by a track coming from the lead track and running a considerable grade to the produce tracks which were on a bank some three feet above the grade of the house tracks. Entry to the house tracks was also from the lead track. The two house tracks were more or less on a level and about thirty feet south of the produce exchange track No. 2. The record fully sustains the theory that in switching cars on the produce exchange tracks and to spot them on these tracks the cars had to be under air on account of the grade, but as to the house tracks it was the universal custom to switch cars on both house tracks without air, and, indeed, plaintiff had previously been so instructed. This custom was to expedite and make easier the switching operations.

On the occasion here in question the engine came into the yard and found two loaded cars spotted on the lead track and these cars were coupled to the engine, air put into them and they were carried to the produce exchange track. They were coupled onto the first empties that were on the produce exchange track, air being on all these cars. These empties (plaintiff says three and foreman Tinney says five) were placed on house track No. 1 under direction of Tinney, the foreman of the switching crew. The two loaded cars were then placed on the produce exchange track. When the empties were placed on house track No. 1 plaintiff bled the air off No. 3 car, so he designates, and the one nearest the freight house. Plaintiff then went to the produce exchange track some thirty feet away and made the coupling for the loaded cars. Plaintiff then returned to house track No. 1 and bled the air from the second car. From plaintiff's version of the facts he had then bled the air from No. 3 and No. 2 cars. He saw the engine coming back to house track No. 1 and at the time of the accident had coupled to these three empty cars. The air had not been bled from the car next to the engine, but plaintiff's testimony is positive to the effect this was a matter of no consequence so far as his accident and the resulting injuries were concerned. Plaintiff then went to the No. 3 car, the one nearest the freight house and reached to turn the angle cock at the end of the car. This angle cock is a valve governing the passage of air through the train line so far as that car is concerned. It is actual rubber and fabric air hose and extends downward, and very heavy.

Plaintiff's evidence tends to show the angle cock was hard to turn and he placed both hands on it. As he did the air hose blew up with great force, struck him in the face, inflicting the injuries set out in the complaint.

Plaintiff further states that he was momentarily dazed by the blow, and when he regained full consciousness the air was coming through the train line very hard and plaintiff heard the pump running fast on the engine. The meaning of this was that the air was put into the train line and was coming from the engine. Two witnesses for defendant testified that the proper way to turn the angle cock was to hold the hose with one hand, not two, and that so holding the hose in one hand and turning the angle cock with the other there was no danger of any injury resulting. It is clear enough the plaintiff was at the place he was supposed to be and performing his duties and the jury might well infer that to fully bleed these empties as he was attempting to do was in the exact

line and scope of his duties. If the use of both hands was under these peculiar circumstances the wrong practice, the jury under the federal decisions noted would consider such contributory negligence only in the measurement of damage as set out in Ellis v. Union Pac. R. Co., supra. But these witnesses for defendant further stated that holding the hose in one hand no injury would result from a 70 pound per square inch pressure in the train line or a 90 pound pressure in the engine. Defendant's witnesses stated there was a 70 pound pressure in the train line and a 90 pound pressure in the reservoir. With the resultant damages to this plaintiff we are persuaded the jury could well find from the proof (the engine still pumping the air) that excessive air pressure was used. But not only so, the jury would be fully justified from the proof that plaintiff had a right to anticipate there would be no air pressure at all on this train line at that time as it was the custom to switch from this track without air.

The negligence of defendant might well be rested not only upon an excessive pressure of air but upon any pressure at all at this particular time.

■ Camp, the switchman following the engine, evidently knew or should have known about where plaintiff was at the time and what he was doing. Ala. Great So. Ry. Co. v. Davis, supra. The argument that Cary should have first ascertained the engine was coupled to the cars and anticipated the air flow overlooks the theory of the proof to the effect that Cary had a right to anticipate no air pressure at all on these house tracks, in accordance with the universal custom. And whether or not the air pressure that caused the injury was from air which Cary left in the car and the result of his own conduct, was clearly also a question for the jury.

There was in the case some conflicting evidence, but we have stated only that upon which plaintiff largely relies as we think the jury could have very reasonably found for the plaintiff upon the theories herein announced.

But we forego further discussion. Our conclusion is that the case was for the jury and the affirmative charge requested by defendant properly refused, and motion for a new trial correctly denied. The judgment will accordingly be here affirmed.

■ Following the rendition of this opinion, the motion to amend the judgment of affirmance here entered presents the only matter here for consideration. This motion relates to the insistence of counsel for appellant that in the affirmance of this judgment the ten per cent penalty should not be imposed. Such a penalty is prescribed under the procedure of this State by Title 7, § 814, Code 1940. Snellings v. Builders' Supply Co., 229 Ala. 1, 155 So. 858.

We are cited to Ellis v. Union Pacific Railroad Co., 329 U.S. 649, 67 S.Ct. 598, 91 L.Ed. 572, and Bailey v. Central Vermont Railroad Co., 319 U.S. 350, 63 S.Ct. 1062, 87 L.Ed. 1444, which we consider here inapplicable.

As we view the matter this question was settled by the Supreme Court of the United States as far back as 1916 in Louisville & Nashville R. R. Co. v. Stewart, 241 U.S. 261, 36 S.Ct. 586, 60 L.Ed. 989, and is conclusive in denial of the motion.

The judgment as heretofore affirmed must stand and the motion be denied.

Affirmed; motion denied.

FOSTER, LAWSON and STAKELY, JJ., concur.