53 So.2d 358

## LOUISVILLE & N. R. CO. v. GREEN.

### 6 Div. 872.

Supreme Court of Alabama.

June 14, 1951.

Chas. H. Eyster, Decatur, and Gibson & Gibson, Birmingham, for appellant.

644

Taylor, Higgins, Windham & Perdue, Birmingham, for appellee.

LIVINGSTON, Chief Justice.

This is an action under the Federal Employers' Liability Act to recover damages for personal injuries. 45 U.S.C.A. § 51, et seq.

■■ The case is of course governed by the Federal decisions, and, as construed by these decisions, the Federal Employers' Liability Act does not make the employer the insurer of the safety of its employees while on duty. The basis of liability is the negligence of the employer, not the fact that injuries occur. Negligence must be "in whole or in part" the cause of the injury. Atlanta, B. & C. R. Co. v. Cary, 250 Ala. 675, 35 So.2d 559, 560; Reynolds v. Atlantic Coast Line R. Co., 251 Ala. 27, 36 So.2d 102.

Count one of the complaint, the only count submitted to the jury, alleged in substance that plaintiff was employed by defendant in interstate commerce, as a night station porter at Athens, Alabama, on to wit, 19th of October, 1946; that on or about said date, while so employed, he suffered a double rupture and consequent damages, and that his said injury and damages were the proximate result of the negligence of defendant's servant, servants, agent, agents, employee, or employees, in failing to furnish plaintiff with sufficient help to perform the duties of his employment.

Defendant entered plea of the general issue, in short by consent with leave, etc.

The jury returned a verdict for the plaintiff, and after defendant's motion for a new trial was overruled this appeal was perfected.

The refusal of the affirmative charge, with hypothesis, to appellant necessitates the examination of the evidence.

The applicability of the Federal Employers' Liability Act is not questioned. Appellee was employed by appellant as night station porter at its railroad station in Athens, Alabama, and had been regularly so employed since 1940. The duties of his employment required him to handle the mail and baggage arriving at and departing from the station and to transport mail between the United States post office and appellant's station at Athens, and to perform certain other duties around the station. He suffered a double rupture on the morning of October 19, 1946, while handling a sack or bag of mail preparatory to its being loaded on the mail car of a train operated by appellant. At the time he was about 63 years of age, weighed about 172 pounds and had been in good health up to the date of his injury. For transporting the mail between the railroad station and the post office at Athens appellant furnished appellee with two types of conveyances, one, a four-wheeled, rubber-tired platform truck about 9 or 10 feet long, 3 feet wide and 3 feet high. The other a two-wheeled cart. Both conveyances were operated by hand, that is, pushed or pulled by appellee. At the time he was injured appellee was loading the four-wheeled truck with mail bags preparatory to putting them on the train. About 50 bags had been placed on the truck. He attempted to place a bag weighing 100–115 pounds on top of the load piled on the truck but it fell somewhat short of the top and came to rest at about the height of appellee's shoulders. He then attempted to push or heave the bag to the top of the load, a point some twelve inches higher than appellee's head, and when he did so he felt a sudden and sharp pain in both sides of his abdomen. The evidence further showed that appellant's hours of employment were from 10:00 P.M., on one day to 6:00 A.M., the following morning. During appellee's hours of employment four trains arrived at and departed from Athens as follows:

| Train No. | Direction Traveling | Scheduled Time of Arrival |
|---|---|---|
| 4 | North | 11:49 P. M. |
| 7 | South | 2:05 A. M. |
| 8 | North | 2:30 A. M. |
| 1 | South | 4:42 A. M. |

Some of these trains carried mail in addition to mail destined for Athens, called "turn-around" mail, that is, mail which came in on a train going in one direction and was unloaded at Athens and then placed on another train going in the opposite direction. It was, therefore, appellee's duty to sort the mail bags arriving on certain trains into two lots, i. e., mail destined for Athens, and "turn-around" mail. The mail destined for Athens was delivered by appellee to the post office at Athens, and the "turn-around" mail was retained at the station for reloading on the proper train. The evidence further showed that the volume of mail handled by appellee between the post office and station (not including "turn-around" mail) immediately prior to the time appellee was injured was approximately as follows:

| Train No. | Number of Bags Incoming | Outgoing | Approximate Weight |
|---|---|---|---|
| 4 | 12 | 30 | |
| 7 | 40 | 1 | 1200 lbs. |
| 8 | 50 | 1 | 1500 lbs. |
| 1 | 6 | 1 | |

The evidence further tended to show that the post office in Athens was approximately a quarter mile distant from appellant's station, and that the streets from the post office to the station were paved; that there was a slight upgrade a part of the way from the station to the post office; that Mr. W. E. Flood was the station agent at Athens, and appellee worked under his supervision; that Mr. E. H. Civils, Jr., was the trainmaster of the Nashville division of appellant's railroad; that prior to appellee's injury he had made protest to Mr. Flood and Mr. Civils that he needed help on the job or that the work was too heavy, but that no assistance was furnished him. The evidence further tended to show that the average weight of the bags of mail handled by appellee was about 30 pounds, and that postal clerks regularly and usually handled the bags without assistance, and that appellee had not complained that the bags of mail were too heavy for him to handle; that no one told appellee how heavy a load to load and transport at each trip to and from the post office; that he was free to place whatever number of bags of mail on each load and use either the four-wheeled truck or the two-wheeled cart; that there were two or three other four-wheeled trucks at the station which he could use in handling the mail, and that no one told him how to handle the bags of mail; that he had at least 2 hours idle time during his shift or tour of duty and there is nothing in the record to indicate that the element of time was a factor in causing appellee to load all the outgoing mail bags on one truck or to pile them high on one truck. In other words, appellee had ample time, in handling the mail, to make as many trips to and from the post office as he desired, and in handling the mail at the railroad station preparatory to loading it on the trains, to use more than one truck if he desired. The evidence further showed that the volume of mail during the war years was much heavier than at the time he was injured; that appellee always handled the mail by himself except at Christmas time, and upon some occasions when he hired some one to assist him.

The gist of this action is the negligence of the railroad company in its failure to provide appellee with sufficient help to prevent that class of hazards which result from an inadequate force to do the work in hand, and that such failure is, in whole or in part, the cause of appellee's injury. Seymour v. Holman, 229 Ala. 634, 158 So. 525; Reynolds v. Atlantic Coast Line R. Co., 251 Ala. 27, 36 So.2d 102. But negligence on the part of the employer is not presumed. The evidence to sustain the claim must be of a substantial sort, not a mere scintilla, and it cannot be predicated on conjecture or speculation. The inference of negligence must be from a reasonable and fair interpretation of the evidence. If the evidence does not fairly show negligence, and that such negligence was the proximate cause, in whole or in part, of the injury plaintiff cannot recover. Alabama Great Southern R. Co. v. Davis, 246 Ala. 64, 18 So.2d 737; Atlanta, B. & C. R. Co. v. Cary, 250 Ala. 675, 35 So.2d 559; Reynolds v. Atlantic Coast Line R. Co. supra. The cases establishing those principles have often been cited and are fixed by the act itself as interpreted by the Supreme Court of the United States. Brady v. Southern Ry. Co., 320 U.S. 476, 64 S.Ct. 232, 88 L.Ed. 239; Tennant v. Peoria & Pekin Union Ry. Co., 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520.

But there are other principles enunciated by the Supreme Court of the United States which need be considered.

In the case of Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 63 S.Ct. 444, 446, 87 L.Ed. 610, it was said:

"We hold that every vestige of the doctrine of assumption of risk was obliterated from the law by the 1939 amendment, and that Congress, by abolishing the defense of assumption of risk in that statute, did not mean to leave open the identical defense for the master by changing its name to 'non-negligence.' As this Court said in facing the hazy margin between negligence and assumption of risk as involved in the Safety Appliance Act of (March 2) 1893, 45 U.S.C.A. § 1 et seq., 'Unless great care be taken, the

servant's rights will be sacrificed by simply charging him with assumption of the risk under another name'; and no such result can be permitted here.

\* \* \* \* \* \*

"The assumption of risk clause in the statute became the subject of endless litigation. The Federal Code Annotated and the United States Code Annotated devote over thirty pages each of fine type merely to the citation and brief summary of the reported decisions and the number of unreported and settled cases in which the defense was involved must run into the thousands. Aside from the difficulty of distinguishing between contributory negligence and assumption of risk many other problems arose. One of these was the application of the 'primary duty rule' in which contributory negligence through violation of a company rule became assumption of risk. Unadilla Valley R. Co. v. Caldine, 278 U.S. 139, 49 S.Ct. 91, 73 L.Ed. 224; Davis v. Kennedy, 266 U.S. 147, 45 S.Ct. 33, 69 L.Ed. 212. Other complications arose from the introduction of 'promise to repair,' 'simple tool' and 'peremptory order' concepts into the assumption doctrine. In the disposition of cases the question of a plaintiff's assumption of risk has frequently been treated simply as another way of appraising defendant's negligence, as was done by the court below in the instant case.

"It was this maze of law which Congress swept into discard with the adoption of the 1939 amendment to the Employers' Liability Act, releasing the employee from the burden of assumption of risk by whatever name it was called. The result is an Act which requires cases tried under the Federal Act to be handled as though no doctrine of assumption of risk had ever existed.

\* \* \* \* \* \*

"In this situation the employer's liability is to be determined under the general rule which defines negligence as the lack of due care under the circumstances; or the failure to do what a reasonable and prudent man would ordinarily have done under the circumstances of the situation; or doing what such a person under the existing circumstances would not have done. A fair generalization of the rule is given in the Senate Committee report on the 1939 amendment: 'In justice, the master ought to be held liable for injuries attributable to conditions under his control when they are not such as a reasonable man ought to maintain in the circumstances.' Of course in any case the standard of care must be commensurate to the dangers of the business. Hough v. Texas & P. R. Co. 100 U.S. 213, 218, 25 L.Ed. 612 [615]; cf. Northern P. R. Co. v. Herbert, 116 U.S. 642, 652, 6 S.Ct. 590, 595, 29 L.Ed. 755, 760."

And in Bailey v. Central Vermont R. Co., 319 U.S. 350, 63 S.Ct. 1062, 1064, 87 L.Ed. 1444, in writing to the question of the negligence of an employer the Supreme Court of the United States said: "The debatable quality of that issue, the fact that fair-minded men might reach different conclusions, emphasize the appropriateness of leaving the question to the jury. The jury is the tribunal under our legal system to decide that type of issue (Tiller v. Atlantic Coast Line R. Co. [318 U.S. 54, 63 S.Ct. 444, 87 L.Ed. 610, 143 A.L.R. 967,] supra) as well as issues involving controverted evidence. Jones v. East Tennessee, V. & G. R. Co., 128 U.S. 443, 445, 9 S.Ct. 118, 32 L.Ed. 478 [480]; Washington & G. R. Co. v. McDade, 135 U.S. 554, 572, 10 S.Ct. 1044, 1049, 34 L.Ed. 235 [241]. To withdraw such a question from the jury is to usurp its functions."

The question then is, whether a fair interpretation of the facts, considered in a light, most favorable to Green, justifies a finding that the appellant was negligent, in its failure to provide appellee with sufficient help to do the work in hand. In determining that question we, as we must do, lay to one side a consideration of any question of appellee's contributory negligence, and any risk assumed by him in the premises.

The burden was on appellee in this case to show inadequacy of force to handle the mails with safety to himself, employing such plans and precautions as

were reasonably open to him. The employer is not to be held negligent for inadequacy of force to do a specific work, if there is a safe and reasonable way to do it with the force in hand. It may reasonably assume that the employee will adopt such plan as to conserve his own safety.

There is no evidence to indicate that the work in which Green was engaged at the time he was injured called for any special skill, as indeed we know that it did not. It involved no element of danger,• unless danger arose from the method employed by Green in its performance. Bags or sacks of mail are ordinarily handled by one person, and the uncontradicted testimony in this case is, that Mr. Calvin, the postal clerk at Athens, and who weighed 143 pounds, handled all the sacks of mail without assistance that appellee handled except the "turn-around" mail. And appellee testified that he thought the sack of mail he was handling at the time he was injured was not "turn-around" mail but came from the Athens post office. True, the height of the lift necessary to handle mail at the post office by Calvin was somewhat less than the height of the lift necessary for appellee to handle the mail at appellant's station. But it is equally true that appellee was not compelled, under any phase of the evidence, to lift the sack of mail to the height which caused his injury.

The evidence indicates that the sack of mail which appellee was handling at the time of his injury was heavier than the ordinary sack of mail. But be that as it may, we do not think that appellant could have reasonably foreseen such an event, coupled with the further contingency that appellee would attempt to lift it to such a height as he did, when a less hazardous method was available to him, and which method he was at liberty to choose.

Here the employer's liability is to be determined under the general rule which defines negligence as the lack of due care under the circumstances; or the failure to do what a reasonable and prudent man would ordinarily have done under the circumstances of the situation; or doing what such a person under the existing circumstances would not have done. Tiller v. Atlantic Coast Line R. Co., supra.

On the record before us we cannot say that the issue of appellant's negligence is debatable, and that fair-minded men might reach different conclusions. The employer is not liable for injuries which it could not avoid in the observance of its duty of care.

The situation here simply shows a regrettable incident for which the appellant is not responsible, since its duty to appellee was fully discharged. The affirmative charge should have been given for appellant. We think it unnecessary to consider other assignments of error.

Reversed and remanded.

BROWN, FOSTER and SIMPSON, JJ., concur.