220 So.2d 876

**Oscar M. BAGLEY, Executor**

v.

**Adele M. GRIME, Executrix.**

**6 Div. 534.**

Supreme Court of Alabama.

March 13, 1969.

Geo. S. Brown and Roscoe B. Hogan, Birmingham, and John W. Vardaman, Anniston, for appellant.

Rives, Peterson, Pettus & Conway, Birmingham, for appellee.

HARWOOD, Justice.

In this case the plaintiff, as Executor of the estate of Robert M. Draper deceased, filed a complaint against Adele M. Grime, as Executrix of the estate of Richard John Grime, deceased.

The case went to the jury on one count. It claimed damages of $250,000 of the estate of Richard John Grime for that on 20 December 1963, the deceased Robert M. Draper was riding as a passenger in an automobile being driven by Grime on Forty-first Street in Birmingham and was fatally injured by Grime who was so wantonly operating said automobile as to allow or permit it to collide with a Southern Railroad Company train and as a proximate result thereof Draper suffered fatal injuries.

For the plaintiff, Cathie Kello, a bartender at the Marine Lounge, testified she served Grime one drink after 5:00 P.M., on 20 December 1963, and after working a banquet in a different part of the lounge, she observed Grime in the Marine Lounge around 7:30 P.M., with a drink in front of him. He invited her to have a drink but she declined. She did not see him after that.

Joyce Shackleford came to work about 5:00 P.M., to replace Cathie Kello. She served Mr. Grime two drinks between 7:30 and 9:00 P.M., but he only consumed about half of the second drink. She testified Mr. Grime left the lounge around 9:00 P.M., and was not intoxicated when he departed.

Loraine Massey, a waitress in a bar in the Eastwood Bowling Center, testified that she observed Grime, Draper, and several others sitting at a table in the bar at the bowling center around 9:00 P.M. Grime and Draper had glasses in front of them, but she was not serving the table and did not know what they drank. Grime left in about an hour. He was not intoxicated at the time.

George Hayes, a policeman for the City of Birmingham, was working off duty at the bowling center bar on the night in question. As a witness for the defendant, he said he saw Grime and Draper in the bar that night, and each had drinks. They left around ten, accompanied by a Mrs. Gant whom they said they were taking home. Grime and Draper were not intoxicated when they left.

Ida Goode, a bartender at the Parliament House Bar, testified that she had known Grime prior to 20 December 1963, and that he had been at her apartment on 20 December 1963, from 12:15 P.M., to about 5:15 P.M. During this time he had four or five drinks of vodka and orange juice. After he left her apartment, he called her over the telephone around 6:00 P.M., 9:00 P.M., and 10:25 P.M. At the time of the last two calls he sounded intoxicated. This witness further testified that Grime had a 1963 model Bonneville Pontiac automobile. (The type of automobile involved in the collision.)

For the defendant, a business acquaintance of Mr. Grime, testified he had seen Grime in Grime's office several times between 1:00 P.M., and mid-afternoon on the day of the accident, and Grime did not appear to be drinking. Mr. Grime's secretary had testified to the same effect. He left with his daughter around 3:00 P.M.

Mr. Grime's daughter testified that after school she had gone to her father's office and later he had driven her to her home where he remained until he had driven her to her place of work. She last saw her father as she left his car around 6:15 P.M. The maid in the Grime's home testified that Mr. Grime and his daughter arrived home together, and he had remained there until she left around 5:00 P.M. Both the daughter and the maid testified that Mr. Grime did not appear to have been drinking during that time.

As to the collision itself, no actual eye witnesses were produced. The evidence tends to show that after the collision Draper's body was found 154 feet east of the point of impact some six feet north of the railroad track. The train continued some

1600 feet east of the point of impact with the automobile caught on the front of the engine with its front end pointing in a northerly direction.

Mr. Grime's body was in the left front seat with his feet entangled in the brake mechanism. There were no skid marks on 41st Street south of the point of impact.

The engineer operating the engine at the time of the collision was dead at the time of trial.

The fireman on the engine testified that the train entered the intersection at the place of collision 18 to 20 miles per hour. The whistle and bell on the engine were operated properly, and the headlight was burning. About a block beyond the intersection, he told the engineer he thought something had hit the train at the intersection. Looking at the front of the engine he saw the automobile. Informing the engineer of the situation, the engineer applied the emergency brakes. By this time the train had increased its speed to between 40 to 50 miles per hour, and as before stated, it did not come to a stop until some 1600 feet beyond the point of impact.

The jury returned a verdict for the defendant, and the plaintiff perfected this appeal.

Assignments of error 42 and 43, relate to the refusal of plaintiff's requested charges 7 and 8. These assignments are argued together.

Charges 7 and 8 are as follows:

Charge 7. "I charge you, gentlemen of the jury, that if a homicide is improperly brought about wantonly, as the proximate result of wantonness, the law says a penalty may be assessed against the person who caused that injury as punishment to the person who did it, if he happens to be living or if he be dead, for the purpose of deterring others similarly situated from taking steps of that character.

Charge 8. "I charge you, gentlemen of the jury, that the purpose of the homicide statute is to prevent homicides and if the person who is guilty is alive when the judgment is rendered that purpose is to punish such person. But if he is then dead and there is no power to punish him, still the jury is authorized to assess such amount of damages against the administrator of his estate as will, in their opinion, best serve the purpose of the law."

Charge 7 was refused without error in that it is elliptical. There is omitted after the phrase "or if he be dead" that punitive damages may then be assessed against the representative of his estate, for the purpose of deterring others.

In his oral instructions the court instructed the jury as follows, in reference to damages to be assessed in event the jury should be reasonably satisfied that Mr. Grime had been guilty of wanton conduct:

"* * * On the other hand, if after a full and fair consideration of all the evidence in this case, you are reasonably satisfied that Mr. Grime was guilty of wantonness on the occasion complained of, and that that wantonness proximately caused Mr. Draper's death, then it would be your duty to find for the plaintiff, and in that event, gentlemen, you would come down to the proposition of considering damages in this case. As I say, this case is base upon a count which charges wanton conduct on the part of the defendant.

"Now, damages in this case under this statute that I have just read to you gentlemen are punitive damages and are not compensatory damages. Compensatory damages are those which will compensate for the loss, the death of Mr. Draper, but punitive damages are by way of what we call punishment damages. Of course, there is no way for you to punish Mr. Grime because he is dead, but damages in this type of action are imposed— are punitive, and are imposed for the preservation of human life and as a deterrent to others to prevent similar wrongs. And, gentlemen, if you find for

the plaintiff, in arriving at the amount of damages which you would assess in this case, the jury should give due regard to the enormity or not of the wrong, and to the necessity of preventing similar wrongs, and the amount of damages should be directly related to the amount of wrongdoing on the part of the *defendant* in this case." (Emphasis ours.)

Through apparent inadvertence the court instructed that the amount of damages should be related to the "amount of wrongdoing on the part of the *defendant* in this case," rather than wrongdoing on the part of Mr. Grime. (Emphasis ours.)

Except for the use of the word "defendant" when the court should have said "Mr. Grime," the instructions of the court substantially covered the matter set up in charge 8.

■ After a reading of the entire oral charge, we do not see how the jury could have been misled in this instance. The following statements appear in the court's oral instructions to the jury:

"* * * by the plea of the general issue the defendant * * * in effect says that * * * 'Mr. Grime was not guilty of the things that he is charged with in this complaint.'

\* \* \* \* \* \*

"* * * So as I say, you are not concerned with negligence. You are concerned with wantonness and the wanton conduct of Mr. Grime on the occasion complained of in this case.

\* \* \* \* \* \*

"So it's up to you gentlemen to say from the testimony in this case whether or not on the occasion complained of on the 20th day of December, 1963, whether or not Mr. Grime was guilty of wanton conduct on that occasion.

\* \* \* \* \* \*

"So it's up to you to say whether or not Mr. Grime was guilty of wanton conduct on the occasion, and that that wan-

ton conduct proximately or directly caused the death of Mr. Draper.

\* \* \* \* \* \*

"* * * You have accumulated a lot of what I like to call common sense. So when you go back to that jury room, gentlemen, you take the testimony that you have heard along with the law that the Court has given you and put your common sense to work and come up with a proposition of whether or not on the 20th day of December, 1963, Mr. Grime— whether or not he was guilty of wanton conduct on that occasion, and whether or not as a proximate consequence of that wanton conduct Mr. Draper met his death. That is your function, gentlemen."

Charge 8 was not drawn to correct the defect in the court's oral instructions in reference to the use of the word "defendant" rather than "Mr. Grime," and no exception was reserved to the court's instructions because of this inadvertence.

Assignments 17, 18, and 21, relate to the action of the court in sustaining defendant's objection to the reception in evidence of certain photographs offered by the plaintiff.

■ Assignment 17 pertains to a photograph of the body made of Mr. Draper at the place it was found after the collision. (Proffered exhibit No. 2.) We cannot see that a photograph of this crumpled body lying in a distorted position could shed any light on the issues of this case. The possible, if not probable, prejudicial quality is self-established. The court properly excluded this photograph.

Assignment 18 pertains to the exclusion of photographs, appellant's proffered exhibits 3, 4, and 5.

These photographs are of the automobile while it was still entangled on the engine. The mangled body of Mr. Grime is depicted in one, and the body of Mrs. Gant, hanging head down out of the right front door of the automobile, is shown in another.

During the colloquy relating to the introduction of the photographs, counsel stated that exhibits 4 and 5 were "material in showing the location of the automobile." This colloquy is set out in full in assignment of error.

■ The "location" of the automobile on the engine, the vast destruction of the automobile as it was pushed down the track by the engine, and its crumpled condition, were described by witnesses in minute detail. All of this evidence was without contradiction. The word pictures drawn by the witnesses in this respect were full, detailed, and complete, even as to the location of the bodies in the automobile. The photographs added nothing to a comprehension of the facts other than a gruesomeness which could serve no useful purpose. They could readily serve as a medium for the cultivation of the germs of prejudice. As stated in Birmingham Baptist Hospital Inc. v. Blackwell, 221 Ala. 225, 128 So. 389, "so far as elucidating any material fact in issue, this photograph was 'at least useless.'" In view of the fact that this action was not against the railroad wherein the photographs might have shed light on the force of the impact, but was against the personal representative of Grime, whose wanton conduct was the issue, we hold that no error resulted from the exclusion of the photographs, since they shed no light on the question of Grime's wantonness.

Assignment of error 34 relates to the following occurrence during the argument of defendant's attorney to the jury. Counsel had been arguing the question of whether the plaintiff had met his burden of establishing that Mr. Grime's conduct was wanton. The record shows this argument continued as follows:

"Now, that is the law. Why is that the law gentlemen? Because I think the law will charge you that under the law of Alabama we have an automobile guest law, and I don't want to bore you with reading it, but this is the guts, if you will excuse me, of the case.

"MR. HOGAN: Your Honor, we object to his reading a guest statute. It's inapplicable in this case. We are not suing on the basis of that guest statute.

"THE COURT: I understand, but I will let him read it. I am going to read it."

The record does not reflect that counsel read the automobile guest statute, though it does show that the court, during his oral instructions to the jury, did read said statute to the jury, no exception being taken to portions of the instructions.

Section 95, Title 36, Code of Alabama 1940, commonly referred to as the "Automobile Guest Statute," provides:

"The owner, operator, or person responsible for the operation of a motor vehicle shall not be liable for loss or damage arising from injuries to or death of a guest while being transported without payment therefor in or upon said motor vehicle, resulting from the operation thereof, unless such injuries or death are caused by the willful or wanton misconduct of such operator, owner, or person responsible for the operation of said motor vehicle."

The complaint averred that plaintiff's decedent, Draper, was riding as a passenger in an automobile being driven by Grime, defendant's decedent. It then avers that Grime wantonly and fatally injured Draper by wanton operation of the automobile.

■ The complaint was drawn to come within the wanton provision of the Guest Statute. Counsel for defendant certainly had the right to argue the applicability of the facts to the statute out of which plaintiff's cause of action arose.

In his argument in support of his contention that defendant's counsel's reference to the Guest Statute in his argument is a ground for reversal of this judgment, counsel for plaintiff (appellant) cites and argues only Shirley v. Shirley, 261 Ala. 100, 73 So.2d 77.

In *Shirley* the action was under the Guest Statute. Counsel for appellant (de-

fendant below) argued that the cause of action being statutory and a plaintiff being required to prove wantonness, and negligence being insufficient to establish such cause of action, contributory negligence should be available as a defense to the only kind of action authorized by the statute. The court rejected this contention on the basis that the statute did not change the principles applicable to wantonness, and did not create a defense of contributory negligence, which is not an available defense to wantonness. We see no applicability of this doctrine to the question now being considered.

We find no error in the situation presented by assignment No. 34.

Assignment of error No. 45 complains of the refusal of the following written charge requested by the plaintiff:

"I charge you, gentlemen of the jury, that knowledge of existing conditions of danger necessary to establish wantonness need not be shown by direct proof but may be made to appear by showing circumstances from which the fact of actual knowledge is a legitimate inference."

The charge reflects almost verbatim a general statement of law enunciated in our cases. See Lewis v. Zell, 279 Ala. 33, 181 So.2d 101. However, it has been established that a charge which merely states a general proposition of law without being hypothesized upon evidence, or which does not instruct the jury of its relation to the issues being litigated, may be refused without error. Francis v. Imperial Sanitary Laundry and Dry Cleaning Co., 241 Ala. 327, 2 So.2d 388; Johnson v. L. & N. R. Co., 220 Ala. 649, 127 So. 216; Molloy v. Mitchell, 223 Ala. 666, 137 So. 896; Gilliland and Echols Farm Supply, etc. v. Credit Equipment Corp., 269 Ala. 190, 112 So.2d 331; Thompson v. Magic City Trucking Service, 275 Ala. 291, 154 So.2d 306.

Affirmed.

LIVINGSTON, C. J., and LAWSON and MERRILL, JJ., concur.