248 So.2d 110

**CENTRAL OF GEORGIA RAILWAY COMPANY, a corporation**

v.

**J. P. STEED.**

**6 Div. 774.**

Supreme Court of Alabama.

April 8, 1971.

Rehearing Denied May 6, 1971.

Sadler, Sadler, Sullivan & Sharp, Birmingham, for appellant.

Rives, Peterson, Pettus, Conway & Burge, Birmingham, for appellee.

MADDOX, Justice.

Appellee, J. P. Steed, brought suit against the Central of Georgia Railroad under the provisions of the Federal Employers' Liability Act, Title 45, § 51 U.S.C., in the Circuit Court of Jefferson County, Alabama on March 3, 1967.

Plaintiff (Appellee) alleged that he sustained injuries as a result of the negligence of the officers, agents or employees of the defendant while acting within the line and scope of their employment by the defendant, or by reason of a defect or insufficiency due to the negligence of the defendant in its cars, engines, appliances, machinery, tracks, roadbed, works or other equipment. In count two he alleged that the defendant negligently failed to exercise reasonable care to furnish or maintain him a reasonably safe place to perform his work.

Prior to the trial of the case, Central of Georgia filed a third party complaint against Riegel Textile Corporation. Riegel removed the case to the U. S. District Court. The issues between the Central of Georgia and Riegel were severed from the main case and the trial was between Steed and Central of Georgia.

The track where the accident occurred was built, maintained, and used in accordance with a track agreement between Riegel and Central of Georgia which provided in part that Riegel would own and maintain

the spur track (or if it failed to maintain the track then it was agreed that the railroad would do it), and that Riegel would indemnify Central of Georgia from loss or damage from any act of the tenant, its employees or agents, while others were on or about the track.

This spur track was situated in part of a roadway in the Riegel plant. At about the time of the accident, a boiler was being constructed across the road from the loading platform. Gravel and debris would get on the tracks from trucks traveling along the roadway.

The alleged negligence occurred on December 30, 1966. Steed was called to fill the regular job of an absent employee whose job included working for the railroad at the Riegel plant that day. Steed had worked with the railroad at the Riegel plant before. He was directing the switching of cars at the Riegel plant by radio. The cars were moving at a speed of about 2–3 miles per hour and Steed was directing the engineer by radio as to how close he was to the rear of the car to be coupled. Steed was standing on the side ladder of the lead car moving toward the loading platform and was between the car and the platform when the derailment occurred. Steed was caught between the car and the platform and dragged 40–50 feet after being caught. The left leg was almost amputated save for a piece of skin and the right leg was badly fractured and torn.

As to the circumstances surrounding the accident, Steed testified that the track looked no different at the time of the derailment than it had on other occasions when he was there. He testified that he was riding on the lead car, approaching another car, and looking at the car ahead, when he heard the sound of rocks grinding and looked down and saw the wheels off the track. He then said that he tried to jump to the platform but was caught between it and the car. A railroad employee testified that there had been four or five derailments on the spur track to the Riegel plant prior to time of the derailment made the basis of

this suit. Steed denied knowledge of any previous derailments on the spur track.

Steed was taken to a Trion, Georgia hospital where his left leg was removed below the knee. He was later taken to Baroness Erlanger Hospital in Chattanooga, Tennessee. Steed was in the hospital in Chattanooga some eighty days during which time he underwent two operations. Pins were placed in the right leg and he was placed in traction for seventy-three days. He was encased in a body cast and kept lying down for approximately three months. He was in and out of the hospital and home in bed for various periods of time through January 23, 1968. He progressed from a wheel chair to a walker. At the time of trial, Steed maintained that he was uncomfortable in his artificial limb and that the stump swelled and drained and that his right leg was stiff and that he did not have full use of it.

When working, Steed made about $700 per month. If he had kept working, his seniority would soon earn him about $1100 per month. There is some testimony that he had suffered great mental anguish and a psychiatrist testified that Steed had become psychoneurotic as a result of the injury and further stated that future psychiatric care might be indicated.

The jury returned a verdict for the plaintiff in the amount of $500,000. On motion for a new trial, the plaintiff accepted a remittitur of $200,000, and the Court denied the defendant's motion for a new trial.

Central of Georgia argues primarily here that the verdict of the jury is so excessive in amount as to shock the conscience of the court, and that the verdict was obviously rendered by the jury as a result of bias, prejudice, or other improper motives, and that the remittitur ordered by the · Court and consented to by the plaintiff, did not eradicate the alleged bias, prejudice or other improper motive. Succinctly stated, the railroad's argument of bias and prejudice is based upon the following premises:

1. The case was recessed for four days because of the death of a juror's mother.

2. The case was recessed for an additional week because of the illness of one of the jurors.

3. The jury deliberated for only forty-five minutes and returned a verdict for $500,000.

4. The trial court's reduction of the verdict by 40% indicates that bias and prejudice existed.

5. The judgment of $300,000 will give the plaintiff an income of $15,000–$18,000 annually for life and permit him to leave an estate of $300,000.

No inflexible rule exists to guide a court in determining whether bias, prejudice or other improper motive is indicated because of the amount of a particular jury verdict. This court has said that the internal evidence, the verdict itself, in the light of the facts clearly disclosed by the evidence, usually furnishes the determining data. Alabama Gas Co. v. Jones, 244 Ala. 413, 13 So.2d 873 (1943).

On motion for a new trial the court ordered the plaintiff to file a remittitur of $200,000 or be required to try the cause again. On several previous occasions this court has determined that such action by the trial court gives rise to a favorable presumption as to the correctness of the amount of the judgment in the sum finally awarded. Airheart v. Green, 267 Ala. 689, 104 So.2d 687 (1958); Hercules Inc. v. Jones, 284 Ala. 692, 228 So.2d 9 (1969); Carlisle v. Miller, 275 Ala. 440, 155 So.2d 689 (1963).

In Airheart v. Green, supra, the Court said:

"The action of the trial court in conditioning the granting of a new trial to the defendant upon the filing of a remittitur by the plaintiff is also urged as error. Courts do not favor the setting aside of verdicts if it can be justly avoided. ' "Remittiturs", * * * "are favored * * * in proper cases, for the promotion of justice and the ending of litigation" '. Cook & Laurie Contracting Co. v. Bell, 177 Ala. 618, 635, 59 So. 273, 279. Where it is found that the jury's verdict is so excessive as to indicate that it resulted from passion, prejudice, or other improper motive, this court, recognizing and applying the above principle has ordered a new trial conditioned, however, upon the failure of the appellee to file a remittitur of a specified amount of damages. Waters v. Anthony, 256 Ala. 370, 54 So. 2d 589; Brasfield v. Hood, 221 Ala. 240, 128 So. 433; Southern Ry. Co. v. Dickson, 211 Ala. 481, 100 So. 665; Alabama Gas Co. v. Jones, 244 Ala. 413, 13 So.2d 873. See also Montgomery Traction Co. v. Knabe, 158 Ala. 458, 48 So. 501 (action of trial court in reducing the verdict; affirmed); Atlantic Coast Line R. R. Co. v. Barnes, 261 Ala. 496, 75 So.2d 91 (remittitur ordered by trial court; affirmed).

"Likewise, where as here the trial court has ordered a remittitur of a specified amount and has refused to grant a new trial, a favorable presumption as to the correctness thereof is indulged by this court. Birmingham Electric Co. v. Thompson, 251 Ala. 465, 37 So.2d 633. And whether this court should further reduce the verdict or set the verdict aside involves a review of trial court's judgment based upon his observation of all the witnesses who testified in the case and other incidents of the trial which cannot be reflected in the transcript and which are not available for observation by us. Luquire Funeral Home[s] Ins. Co. v. Turner, 235 Ala. 305, 178 So. 536; Birmingham Elec. Co. v. Howard, 250 Ala. 421, 34 So.2d 830; Moore v. Cooke, 264 Ala. 97, 84 So.2d 748."

No standard exists for the admeasurement of damages for pain and suffering, and the weight to be given evidence of pain and suffering is discretionary with the jury. Only when the verdict or the amount has been induced or reached on account of bias, passion, prejudice, corruption or other improper motive or cause does the court have authority to set the verdict aside or order a remittitur. The court is without authority to interfere with the verdict on the ground that in the opinion of the court the jury gave too much. Airheart v. Green, supra, and cases there cited. Stringfellow v. Rambo, 277 Ala. 349, 170 So.2d 494 (1965).

We have carefully studied the entire record, taking into consideration the guiding principles set out in Airheart v. Green, supra, and being mindful that we must exercise our authority to disturb a jury verdict with great caution, we decline to order a further reduction or to order a new trial on the ground that the amount finally awarded is so excessive as to indicate bias, passion, prejudice or other improper motive.

Appellant railroad also claims that the trial court erred in not granting defendant's motion for a mistrial based on the cumulative effect of the following events which occurred during the course of the trial:

1. The mother of a juror died.

2. A juror became ill and had to be hospitalized.

3. The juror who became ill was required to continue service on the jury while still technically a patient at the hospital.

4. The husband of a juror at the courthouse where the case was tried made a statement to representatives of the defendant but which apparently was not communicated to the juror herself that the defendant should settle the case, that it had plenty of money.

The applicable statute is § 100 of Title 30, Code of Alabama, 1940 (Recomp. 1958):

"The courts or presiding judges in all cases of jury trial may discharge the jury without giving a verdict, with the consent of all parties to the trial, or without the consent of the parties, when in the opinion of the court or judge there is manifest necessity for the discharge, or when the ends of justice would otherwise be defeated. In all cases, in which the jury is discharged, without a verdict, a mistrial shall be entered upon the minutes of the court, assigning the reason or cause for the mistrial; and no person shall gain any advantage by reason of such discharge of the jury."

Unquestionably, the trial of this cause did not proceed without difficulty. The trial Judge was aware of this fact and so stated in his order on the motion for a new trial. We have carefully examined the record, however, and fail to see that the trial Judge abused his discretion in refusing to grant a mistrial. The mother of the juror who died was quite elderly, was in a nursing home and had been ill for some time. The trial Judge determined not only from the doctor but from the juror herself that she was able to participate in the trial as a juror. The trial Judge investigated thoroughly the alleged statement made by the husband of one of the jurors and after such investigation determined no prejudice existed. Moreover, we think the principle announced by this court in Shadle v. State, 280 Ala. 379, 194 So.2d 538 (1967) is applicable here:

"* * * Of course, it is well recognized that the granting of a mistrial is within the sound discretion of the trial court, for he, being present, is in a much better position to determine what effect, if any, some occurrence may have upon the jury's ability to decide the defendant's fate fairly and justly. And we will not

interfere with the trial judge unless there had been a clear abuse of discretion. * * *"

Appellant's Assignment of Error No. 51 is as follows:

"The Trial Court erred in sustaining the plaintiff's objection to the defendant's offer to introduce into evidence what has been identified as Defendant's Exhibit B, being an exemplified copy of the complaint filed by the plaintiff in the State of Georgia against Riegel Textile Corporation and McBerney Stoker and Equipment Company."

During the cross-examination of plaintiff Steed, railroad attorneys attempted to introduce into evidence pleadings in a case filed in the Superior Court of Fulton County, Georgia styled "J. P. Steed and Ruth Steed, plaintiffs, v. Riegel Textile Corporation and McBerney Stoker and Equipment Co., defendants."

The trial court refused to admit the pleadings, stating:

"* * * [T]he wording of the complaint would not be material, the fact of

the filing of the complaint having already been made a part of the evidence in the case."[1]

■ The fact that Steed had filed a suit against Riegel and McBurney Stoker in Atlanta was obviously before the jury. Steed himself testified that he "guessed" a suit had been filed on his behalf in Georgia. The trial Judge instructed the jury on two separate occasions to the effect that an individual could file several suits but could have but one satisfaction. Therefore, it would appear that even if it were considered to be error to reject the evidence, such rejection did not probably injuriously affect the substantial rights of the railroad. Supreme Court Rule 45, 261 Ala. XXXVII. Furthermore, we are not entirely convinced that a proper predicate was laid for the introduction of the pleadings since the record fails to show sufficiently that the pleadings sought to be introduced were drawn under Steed's direction or with his assent.[2] In addition, the trial Judge, upon rejecting the admission of the pleading was careful to point out the previous statement

1. During opening statements to the jury both sides discussed the suit by Steed against Riegel and McBerney Stoker, the discussion finally terminating in a statement from the Court as follows:

"THE COURT: I was thinking something that I was about to say. I know the jury is already mystified about one aspect of this lawsuit, with reference to other suits, and so forth.

"They may be laboring under the impression that, for instance, if there were four or five automobiles out here in a crash, that you could sue the driver of each one of them if you got hurt in it.

"Well, you could.

"But, if you are mystified as to that, here, where this plaintiff is suing first one and then another, the law says that no litigant can ever have but one satisfaction of his claim.

"If he doesn't take the money—he can sue various people, but he can't [sic] ever have but one satisfaction of the claim, whether it comes from this source, or the other source.

"So, that is—another reason—the only reason I have for mentioning it is this:

"What we are going to try, as best we can, if counsel will work with me on it, and I hope they will, is to get our minds on this lawsuit and try it in fairness and in justice to both sides, and we can do this if we will put our minds on the business of trying this lawsuit on its merits, and on the law of the case, and on the testimony in the case, in trying this case and disposing of it.

"I will give each side an exception to what I have said."

2. "Q (BY MR. SADLER:) Mr. Steed, on your behalf a suit has been filed in the State of Georgia, has it not?

"A I guess it has.

"Q Against the Riegel Textile Corporation?

"A I haven't [sic] never seen it, just—

"Q (Interposing) You authorized your attorney to do that, did you not?

"A No audible answer.

"MR. SADLER: I would like to introduce this exemplified copy of the complaint, if the Court please, and if we can have this marked as an exhibit."

he had made to the jury about the filing of other lawsuits in connection with the transaction made the basis of this cause; therefore, the jury had to be aware of the fact that Steed had filed the other actions.

In Maddox v. Ennis, 274 Ala. 229, 147 So.2d 788 (1962), this Court stated the "rule" of Cole v. L & N R. R., 267 Ala. 196, 100 So.2d 684, where McElroy's Law of Evidence was quoted as follows:

"As a general proposition, pleadings that have been filed in behalf of a party in another cause or in the present cause, are admissible against him as admissions in the present cause if * * * it be first shown that they were drawn under his direction or with his assent. [Citing cases]" Maddox, supra, then goes on to state:

"We note that Vol. II of the 'Law of Evidence in Alabama' (1962), by Judge McElroy, Sec. 181.01 p. 7 states:

" 'It is clear that a party's document of pleading whether filed in the present action or another action is admissible against such party in the present action, as an admission of the truth of the facts stated in the pleading, if it is shown that such party swore to it, signed it, directed its drawing, or assented to it as a correct statement: [Citing cases.]' "

We find no reversible error in the trial court's rejection of the pleadings filed by Steed in Georgia.

Appellant claims in Assignment of Error No. 19 that the trial court erred in refusing to give defendant's charge:

"8. Ladies and gentlemen of the jury, I charge you that after considering all of the evidence in the case you are doubtful or uncertain as to whether or not any claim of injury to the plaintiff was a direct proximate consequence of a negligent act of the defendant, then you must resolve that doubt in favor of the defendant."

The rejected charge is similar to charges condemned in Hill Grocery Co. v. Wilson, 265 Ala. 49, 89 So.2d 687 (1956) and Nelson v. Lee, 249 Ala. 549, 32 So.2d 22 (1947), and we find no error in refusing the charge.

Appellant's Assignment of Error No. 21 claims the trial court erred in refusing to give this charge:

"11. Ladies and gentlemen of the jury, I charge you that if you are reasonably satisfied from the evidence in this case that the plaintiff sustained his injuries and damages as the proximate result of an unavoidable accident, and not as the direct proximate result of any negligence on the part of the defendant then you cannot find in favor of the plaintiff and against the defendant."

In the case of Socier v. Woodard, 264 Ala. 514, 88 So.2d 783 (1956) this court said:

" * * * [N]either the giving nor refusal of such a ['mere accident'.] charge is reversible [error]. But the better practice is to refuse it."

This court has also held that the "unavoidable accident" charge has a tendency to confuse and mislead and the better practice is to refuse such a charge. Taylor v. Thompson, 271 Ala. 18, 122 So.2d 277 (1960), and Riddle v. Dorough, 279 Ala. 527, 187 So.2d 568 (1966).

Appellant claims the trial court erred in refusing to give this charge: (Assignment of Error No. 58)

"A. The court charges the jury that a verdict in this case will in no way affect the plaintiff's right of recovery in the Georgia litigation."

Appellant cites no authority to support this assignment but maintains there was confusion in the jury's mind about the other lawsuits and the charge should have been given.

In any event, the matter was adequately covered in the court's oral charge as follows:

"The verdict for the plaintiff here, or for the plaintiff there, would not affect the other case. A verdict for the defendant here, or a verdict for the defendant over there, would not affect—neither one would affect the other, because it is a different entity that is sued, and they are really under a different law."

There was no error to refuse the charge. Supreme Court Rule 45.

Appellant railroad says that the trial court erred in refusing to give this charge:

"53. Ladies and gentlemen of the jury, I charge you that Mr. Steed was under a duty to keep a reasonable lookout for dangerous conditions on the track ahead of the lead car of the train. If you are therefore reasonably satisfied from all of the evidence in the case that there were dangerous conditions on the track ahead of said lead car of said train which he could have discovered by the exercise of reasonable diligence, that he could have then avoided his accident and injuries had he discovered said conditions in time and that the defendant was not guilty of any negligence, which proximately contributed to his injuries and damages, then you cannot find in favor of the plaintiff and against the defendant."

The defense available in an F. E. L. A. action is that the employer was free from negligence proximately causing the injury. Contributory negligence of the plaintiff would not bar recovery but would merely mitigate damages. The trial court charged the jury in great detail on this point of law. The charge is somewhat confusing, and the trial court adequately covered the question of the plaintiff's alleged contributory negligence in his oral charge to the jury.

Assignment of Error No. 37 is to the effect that the trial court erred in refusing this charge:

"29. I charge you, ladies and gentlemen of the jury, that no persumption of negligence on the part of the defendant arises from the mere fact that the plaintiff was injured and damaged on the occasion complained of. The plaintiff has the burden of proving to your reasonable satisfaction from the evidence in the case that the defendant was guilty of negligence on the occasion complained of which proximately caused the injury and damage to the plaintiff, and if you are not so reasonably satisfied from the evidence in the case, then you cannot find for the plaintiff and against the defendant."

Of course, under Title 45, § 51 U.S.C. there is no presumption of negligence against the carrier arising upon mere proof of injury to or death of an employee. Appellant recognizes that there is a *prima facie* presumption of negligence where there is a derailment, but claims that in instances where the cause of the derailment is explained by the evidence in the case then the presumption vanishes.

The case of Ruddy v. New York Central R. R., 224 F.2d 96, cert. den., 350 U.S. 884, 76 S.Ct. 137, 100 L.Ed. 779 (1955) stands for the proposition that under the *res ipsa loquitur* doctrine, negligence of the railroad causing injury could be inferred from the mere fact that the car was derailed on the spur track. In view of the fact that there was evidence of a derailment which caused the injury here, and since the trial Judge substantially covered the question of the burden of proof on the plaintiff and the question of contributory negligence in F. E. L. A. cases in his oral charge, there was no error in refusing the charge. Supreme Court Rule 45, 261 Ala. XXXVII.

Appellant claims that the trial court erred in qualifying the jury as to whether any members of the jury were employees of

or had any financial interest in the alleged insurance carriers of Riegel Textile Co. and McBurney Stoker Equipment Corporation.

Appellant, in brief, says that the trial judge and the appellee fostered "an insidious plan to brainwash the jurors into believing that a recovery by the plaintiff would really not affect the railroad financially." We find nothing in the record to substantiate this statement made in brief and we are bound by the record.

We might point out that counsel for the railroad opened the controversy by stating to the prospective jurors that the railroad had no insurance. He then mentioned the suit in Georgia and that the suit was against McBurney and Riegel and asked the prospective jurors if they had ever worked for either of these two companies. Plaintiff's counsel then asked the court to qualify the jury as to their interest in the insurance carriers for the two companies. Appellee maintains that the court cautiously exercised its discretion to examine the prospective jurors, and the record supports his position.

In Roan v. Smith, 272 Ala. 538, 133 So.2d 224 (1961), this Court stated:

"The inquiries directed to prospective jurors as permitted under Tit. 30 § 52, Code of 1940, should be liberal and extend to any and all matters touching the qualifications, interest, or bias of prospective jurors. The extent of this examination of prospective jurors as to their qualifications is largely a matter resting within the sound discretion of the trial court. (Citations omitted.)

"The attorney for the appellee stated to the court: 'The Roans own the Cadillac Finance Company.' This statement was not denied by the appellants. Under such circumstances, we think the trial court did not abuse its discretion in qualifying the jury as to any interest in the Cadillac Finance Company. Moreover, since no jurors answered the question

in the affirmative, and not being struck as a result of such answer, it appears that even if the trial court was in error, it was error without injury."

Since the subject of insurance coverage was injected by the railroad, and the jury was qualified as to any interest in the two companies in the Georgia suit, we do not think under the rule set forth in Roan, supra, that there was an abuse of discretion. We do not hold, however, that such qualifying questions would be proper in every case but under the facts of this case, we find no prejudicial error.

Assignments of Error No. 47 and No. 49 concern a track agreement between the railroad and Riegel Textile Corporation. Defendant's counsel objected to the statement made by plaintiff's counsel in his opening address to the jury:

"Now, we expect the evidence to show that there was a contract between Riegel Textile Corporation and the Central of Georgia Railway Company."

The agreement was later admitted into evidence over the objection of the railroad. The railroad maintains that the agreement was not material or relevant and was highly prejudicial, claiming that the plaintiff insinuated that the railroad was indifferent about the track since Riegel would have to bear expenses if damage or injury resulted.

Steed's attorneys say that the court was not apprised of any lack of materiality in the contract because appellant's objection was too general. The agreement was the first item of evidence sought to be introduced in the trial. The following occurred.

"THE COURT: Who will you have, gentlemen?

"MR. RUTLEDGE: Sir, we are ready with plaintiff's Exhibit Number 1. I want to offer into evidence, at this time, the contract between the Central of Georgia Railway Company and Riegel Textile Corporation, dated 24 August, 1948,

which has been produced by the defendant in response to a motion to produce, which is the agreement covering the construction of the track and the operation, and the maintenance of the railroad activities in the Riegel Textile Corporation plant, which I would like to read to the jury, Your Honor.

"THE COURT: Let counsel see it.

"MR. RUTLEDGE: He gave it to me.

"MR. SADLER: I object to it. We think that the contract is not relevant to the issues in this case.

"It in no way increases or diminishes the duty that we might owe the plaintiff.

"The duty, which we recognize, and whatever contract we might have with somebody else would be irrelevant and immaterial to the issues directed to us, and which is charged here, with respect to the maintenance of the track aspects of the contract within the financial arrangement.

"THE COURT: I will overrule.

"MR. SADLER: We except."

Appellant cites the case of Baltimore & O. R. R. v. Rodeheaver, 197 Md. 632, 81 A.2d 63 (1951) to support its argument that the agreement was inadmissible.

In *Rodeheaver*, supra, it was the railroad there which offered the indemnity agreement for the purpose of showing that the State Roads Commission agreed to hold the railroad harmless from all costs, etc., for injury to persons growing out of the erection, maintenance or operation of a bridge. The appellate court held that the lower court properly sustained objection to the document, since the case was not concerned in any way with whether the commission should indemnify the railroad.

At least one other jurisdiction has held that such agreements are admissible if any part of it relates to the duties of the parties thereto respecting clearances or dangerous obstructions, or otherwise bears upon the present controversy. Truitt v. Southern Pacific Co., 112 Cal.App.2d 218, 245 P.2d 1083 (1952).

Appellant's main argument is directed at the paragraph of the agreement which provided that Riegel would indemnify Central of Georgia against damages on account of the spur track. As is readily apparent, the objection made by appellant's counsel does not specifically point out to the court the indemnification paragraph of the agreement as being the objectionable portion. The court was not requested to delete or exclude the indemnification paragraph from the remainder of the agreement. In view of this, even assuming without deciding that the indemnification paragraph may have been inadmissible, the court should not be put in error when no specific objection is made. We think that the portions of the agreement which spelled out the duties of the railroad and Riegel with regard to the spur track were clearly admissible on the issue of the responsibility of the railroad to provide the plaintiff with a safe place to work. This court has previously held that when portions of a document are admissible the whole document may be admitted without error even though some parts of the document may be inadmissible and prejudicial. Moore-Handley Hardware Co. v. Williams, 238 Ala. 189, 189 So. 757 (1939). We find no error in admitting the agreement under the facts and circumstances of this particular case.

Appellant claims that the trial court erred in overruling its objection to the introduction in evidence of a photograph of the plaintiff while he was in traction in the hospital. Appellant's attorneys argue that the only possible purpose of the photograph was to inflame the jury and in support of their argument cite Bagley v. Grime, 283 Ala. 688, 220 So.2d 876 (1969). We have examined the photograph introduced in this case and find that it is not of

the inflammatory character as the one sought to be introduced in *Bagley*. Furthermore, in *Bagley* the trial court had refused to permit the introduction of a photograph of a "crumpled body" taken at the scene and this court held that the court acted properly in excluding the photograph in that case. This Court there said:

> "In view of the fact that this action was not against the railroad wherein the photographs might have shed light on the force of the impact, but was against the personal representative of Grime, whose wanton conduct was the issue, we hold that no error resulted from the exclusion of the photographs, since they shed no light on the question of Grime's wantonness."

We hold that the trial court committed no error in allowing the photographs of the plaintiff which were taken while he was in traction in the hospital.

We have carefully considered appellant's other assignments of error which were argued in brief and find no error was committed by the court.

The judgment of the trial court is due to be affirmed.

Affirmed.

HEFLIN, C. J., and LAWSON, SIMPSON, MERRILL, HARWOOD, BLOODWORTH and McCALL, JJ., concur.

COLEMAN, J., dissents.

## ON REHEARING

On application for rehearing, Central of Georgia raises but one new issue, the assessment against it of the ten per cent penalty required to be assessed under the provisions of Title 7, § 814, Code of Alabama, 1940 (Recompiled, 1958). Central of Georgia assigns several grounds in its motion asking this court to "expunge, delete or remove the ten per cent penalty, amounting to $30,000, which has been assessed

against the appellant." Stated succinctly, the grounds are (1) that the assessment is discriminatory and denies it equal protection of the law under the fourteenth amendment to the Federal Constitution; (2) that Title 7, § 814 is repugnant to the Alabama Constitution in that it penalizes an unsuccessful defendant-appellant, but does not penalize an unsuccessful plaintiff-appellant; (3) that Alabama cannot assess a penalty in a Federal Employers' Liability Act case wherein the cause of action arose outside the State of Alabama; (4) that Alabama's assessment of the penalty is different from other states, creating an inconsistent and unfair application of the FELA law among the courts of the several states; (5) that the assessment is illegal and (6) that Title 7, § 814 is unconstitutional.

This Court has previously decided that the ten per cent penalty imposed by Title 7, § 814 is appropriate. In Atlanta, Birmingham & Coast R. Co. v. Cary, 250 Ala. 675, 35 So.2d 559 (1948), we had the exact question before us involving an appeal in an action under FELA. We said:

> "Following the rendition of this opinion, the motion to amend the judgment of affirmance here entered presents the only matter here for consideration. This motion relates to the insistence of counsel for appellant that in the affirmance of this judgment the ten per cent penalty should not be imposed. Such a penalty is prescribed under the procedure of this State by Title 7, § 814, Code 1940, Snellings v. Builders' Supply Co., 229 Ala. 1, 155 So. 858.

> "We are cited to Ellis v. Union Pacific Railroad Co., 329 U.S. 649, 67 S.Ct. 598, 91 L.Ed. 572, and Bailey v. Central Vermont Railroad Co., 319 U.S. 350, 63 S.Ct. 1062, 87 L.Ed. 1444, which we consider here inapplicable.

> "As we view the matter this question was settled by the Supreme Court of the United States as far back as 1916 in

Louisville & Nashville R.R. Co. v. Stewart, 241 U.S. 261, 36 S.Ct. 586, 60 L.Ed. 989, and is conclusive in denial of the motion.

"The judgment as heretofore affirmed must stand and the motion be denied."

The application for rehearing is denied and the motion to expunge the ten per cent penalty prescribed by Title 7, § 814, is denied.

Opinion extended. Application for rehearing overruled. Motion to expunge 10% penalty denied.

HEFLIN, C. J., and LAWSON, SIMP-SON, MERRILL, HARWOOD, BLOOD-WORTH and McCALL, JJ., concur.

COLEMAN, Justice.

On original deliverance I was of opinion that the judgment for plaintiff should be reversed and a new trial granted to defendant. I am of the same opinion still and do not reach the question treated in the opinion of the court on rehearing.