170 So.2d 494

Willie STRINGFELLOW et al.
d/b/a Evans' Feed Mill

v.

Carl RAMBO.

1 Div. 214.

Supreme Court of Alabama.

Jan. 7, 1965.

Collins, Galloway & Murphy, Mobile, for appellants.

M. A. Marsal and Howell, Johnston & Langford, Mobile, for appellee.

COLEMAN, Justice.

Defendants appeal from a judgment for plaintiff in action for personal injury sustained by plaintiff when one of defendants drove a truck into the rear of an automobile plaintiff was driving. At time of collision, plaintiff's vehicle was in a line of cars stopped at a traffic light.

The jury returned a verdict for plaintiff for $17,000.00 and judgment was entered accordingly.

Defendants argue that the court erred in overruling the grounds of their motion for new trial which assert that the verdict is excessive.

There is no yardstick by which compensatory damages for pain and suffering can be measured, and the ascertainment of the amount due plaintiff for such damages must be left to the sound discretion of the jury, subject only to correction by the court for clear abuse or passionate exercise. W. S. Fowler Rental Equipment Co. v. Skipper, 276 Ala. 593, 165 So.2d 375, 386.

The verdict of the jury should not be interfered with merely because, in the opinion of the court, the jury gave too little or too much, and the authority vested in courts to disturb a jury verdict on the ground of excessiveness should be exercised with great caution. Carlisle v. Miller, 275 Ala. 440, 444, 155 So.2d 689.

Where the trial court refuses to grant a new trial because he does not believe the verdict to be excessive, the favorable presumption attending the jury's verdict is thereby strengthened. Vest v. Gay, 275 Ala. 286, 288, 154 So.2d 297.

Trial was had in November, 1963. Plaintiff testified that the injury occurred in June, 1961; he went to a Mobile doctor a few days thereafter; four or five days after he returned to his home in Tennessee, plaintiff consulted an orthopedic surgeon who examined plaintiff and took X-rays; plaintiff was "Suffering from muscle spasm or pains in my neck that was piercing down into my shoulder and aches and pain I still have today"; plaintiff was treated by the Tennessee physician for about two weeks, and then was hospitalized; he stayed in the hospital seven to nine days; he was put in head traction and slept in head harness; plaintiff was a salesman traveling in north Florida across into Louisiana; he went back to work; he felt very comfortable but still had something wrong with his neck; he was hospitalized again in November, 1961, for thirty-one days; during the interval between the two hospitalizations he had a standing appointment with the doctor not more than once a month and was re-examined and re-X-rayed; he went back to the doctor more often when he had spasms or pain, and, in November, was sent back to the hospital;

he had primarily the same treatment; they would give him sonic treatment and stretch his neck up, 21 pounds for a few minutes at a time and 6 pounds while in bed; at the end of the month he was improved but still had pain; after two weeks' rest he went back to work; he changed companies; a factory salesman covers 50,000 miles a year; his later job did not require as much driving but he still has to do a lot of continuous driving; he continued to go to the doctor until in June, 1962, the doctor told plaintiff that he had a permanent disability; plaintiff has been on the road since January, 1962; his neck would tighten up from trip to trip; if plaintiff could get off a long weekend and rest it would help some, but it continues to bother him; today and over the last weeks plaintiff has more pain than he did after six weeks of rest coming out of the hospital; he has a steady pain in his neck and spends a great part of the time driving with his left hand behind his neck after hours of driving; plaintiff uses heating pad and massage; plaintiff does not have full range of motion in his neck; plaintiff lost six weeks from work; plaintiff feels pain every day; plaintiff had never in his life experienced any trouble with his spine or neck prior to this accident.

Dr. Brashear, an orthopedic surgeon, testified as to his treatment of plaintiff; that the witness in May, 1962, was of opinion that plaintiff "has a real disability of about 15% to his body as a result of the pain, stiffness, soreness, and limitation of motion in his neck"; that the witness did not then expect plaintiff to improve ever; at the time of testifying, the witness had not seen plaintiff in over a year and did not know what changes in plaintiff's condition, if any, had occurred; that the injury to plaintiff's neck aggravated his pre-existing arthritis; that the damage is greater than it would have been to a normal neck.

On defendant's request, the court appointed Dr. Bender, another orthopedic surgeon, to examine plaintiff a few days prior to the date of trial. Dr. Bender testified, among other things, that he examined plaintiff and found "limitation of motion of the cervical spine in all directions and the extremes of motion caused pain"; in opinion of witness plaintiff has approximately ten percent permanent partial disability of the cervical spine; that X-rays showed "Loss of the normal lordotic curve." The physicians were extensively examined and cross-examined. By stipulation, plaintiff sustained medical expenses amounting to $1,400.00. Actual loss of wages amounted to $600.00.

Defendants cite several cases, some from neighboring states, to support the contention that verdict is excessive. Plaintiff cites similar cases to support the contrary view.

In passing on the question of excessiveness of damages, this court will look to the decreased purchasing power of money, the present inflationary trends, and the enormous increase in the cost of living and give approval to a larger verdict than under normal conditions. W. S. Fowler Rental Equipment Co. v. Skipper, supra; Birmingham Electric Co. v. Howard, 250 Ala. 421, 34 So.2d 830.

On review of the question here, we will not reverse unless the amount is so excessive or inadequate as to indicate prejudice, passion, partiality, corruption, or the like. Yarbrough v. Mallory, 225 Ala. 579, 144 So. 447.

On careful consideration of the evidence in light of well-known, established rules of review, we are unwilling to pronounce our judgment; based only on the printed page, to be so superior to that of the jury and the trial judge as to supersede their view and substitute our judgment for theirs.

The grounds of the motion for new trial taking the point that the verdict was excessive were overruled without error.

Affirmed.

LIVINGSTON, C. J., and LAWSON and GOODWYN, JJ., concur.