310 So.2d 194

**LOUISVILLE AND NASHVILLE RAIL-ROAD COMPANY, a corporation**

v.

**H. G. PHILLIPS.**

**SC 572.**

Supreme Court of Alabama.

March 6, 1975.

Rehearing Denied April 10, 1975.

Rives, Peterson, Pettus, Conway & Burge, Birmingham, for appellee.

Henry E. Simpson, Birmingham, for appellant.

EMBRY, Justice.[1]

This is an appeal by defendant Railroad Company from an order of the trial court granting a motion for new trial. We affirm.

The action was by plaintiff employee of defendant Railroad under the provisions of Tit. 45, U.S.C.A., 1, 9 (Federal Safety Appliance Act) and § 51 (Federal Employers' Liability Act); claiming damages for injuries to his right elbow and arm as a result of two incidents occurring on separate occasions.

At the close of the evidence the issues were submitted to the jury and a verdict returned by it in favor of the defendant Railroad. Judgment was entered accordingly.

The facts surrounding the incidents producing the injuries are not necessary to a determination of the issues raised in this case. After judgment, plaintiff employee filed motion for new trial on the ground, among others, that a question to plaintiff by attorney for defendant during cross-examination of plaintiff was so prejudicial to plaintiff and his rights that he did not obtain a fair trial of the action.

The ground as stated in motion of plaintiff for new trial is as follows:

"8. For that on Motion in Limine, the Court instructed Counsel for the defendant to write out any question and present it to the Court or to present any question before asking it in the presence of the jury concerning an assault and battery charge or charges of which the plaintiff was charged and/or convicted subsequent to the injuries alleged in plaintiff's complaint and that Counsel for the defendant did not comply with said instructions of the Court but asked the plaintiff in the presence of the jury in substance, the following question:

'Was that the fracas with the young lady',

such question being so prejudicial to the plaintiff and to the rights of the plaintiff and so contrary to the instructions of the Court to defendant's Counsel that plaintiff could not obtain a fair trial."

The question presented for review is whether the trial court was justified in its conclusion that a new trial should be granted because of the infection of prejudice into the proceedings to the extent that plaintiff could not and, therefore, did not obtain a fair trial of his case. Defendant Railroad on the other hand urges in substance that prejudice, if any, was not sufficient to have affected the result or, on the other hand, such was eradicable and cured by action of the trial court during trial.

Extensive and exhaustive briefs for both of the parties are directed to the issue presented for review. There is a plethora of citations seeming to support the contentions of each of the parties.

We here quote the penultimate series of questions and answers that apparently

---

1. This case was originally assigned to another justice of this court, since retired. It has been reassigned to the writer, not a member of this court at time of submission, who has carefully listened to the tape recordings of oral argument. Code of Ala., Tit. 13, § 7; Alonzo v. State ex rel. Booth, 283 Ala. 607, 219 So.2d. 858.

moved the trial court to grant the motion for a new trial. These climaxed other occurrences which the trial judge apparently deemed prejudicial to plaintiff.

"Q (BY MR. SIMPSON:) Well, you have lifted furniture since this accident, haven't you?

"A I have, yes, sir.

"Q And moved it up into second stories of apartment buildings, haven't you?

"A No, sir.

"Q Where?

"A On first stories.

"Q On first stories and you moved it around from apartment to apartment?

"A On ground floors, yes, sir.

"Q You carried it?

"A Sir?

"Q You carried it, didn't you?

"A Oh, I carried some lamps and some end tables.

"Q All right. Did she carry the sofa or did you?

"A Who?

"Q The young lady that you had the fracas with?

"MR. BURGE: There, Judge, there. You can—

"MR. SIMPSON: He asked me the question.

"MR. BURGE: There you go, Judge, and we move for a mistrial if it please the court.

"THE COURT: Gentlemen, this case or any other are to be tried in accordance to the testimony that bears on the case that we are trying now. I want to say that to both sides that I will not stand for as being fair inquiries those that are on the side and have to do primarily with other matters and don't throw any direct light, on the questions we are trying. I won't stand for that. It is not proper and it is not legal and that's all counsel on either side needs to know in my humble opinion. So go ahead with your question."

Other matters appear in the record that are within the ambit of ground eight of plaintiff's motion for new trial. The first of these surfaced on the occasion of the hearing of plaintiff's motion *in limine*. That motion sought to "head off," as it were, anticipated injection of irrelevant prejudicial evidence into the trial. Specifically it was to preclude introduction by defendant of evidence concerning plaintiff gleaned from records of the Nashville, Tennessee, Police Department that: (a) plaintiff had received a traffic ticket, (b) had been arrested and convicted on two counts of assault and battery and one of disorderly conduct, (c) had suffered a forfeiture of a $50 bond for failing to appear and answer drunk and disorderly conduct charges.

These facts had been developed by defendant on oral deposition of a Sergeant of Police of Nashville. To that deposition there was attached as an exhibit, the entire police record of plaintiff. The assault and battery counts as well as the charge of disorderly conduct arose from an incident with a lady ("Q The young lady that you had the fracas with?") after he suffered the alleged injuries made the basis of his asserted right to recover damages from his employer.

On the hearing of the motion *in limine* defendant advanced the theory that assault and battery involved physical exertion by plaintiff thus evidencing ability to use his arm at a time when he was claiming to be disabled. In sum, the argument of plaintiff to the contrary was that such light as might gleam on the issue by admitting the evidence would be far outweighed by prejudice to him from revelation that the assault and battery consisted of shoving a woman. It should be noted that the trial court ruled at this point that the police re-

cord exhibit would not be admitted and further stated:

"THE COURT: I would say this: The records you have may not be explicitly (sic) enough as to the activity to make it admissible. A man who says he is disabled in the right arm. Whether he is in the right or whether he is in the wrong in a certain fracas would be not the question we are trying here but whether or not he had an activity in that arm where he could use that arm and did use it. That's the question that we would be involved in."

and

"THE COURT: * * * I would say this, if counsel for the defendant in the course of the trial finds that he wants to question the plaintiff about some of that or some other witness, I would believe maybe that we better have a further short conference to see just exactly the area that is to be covered. I believe it would be an area covered. All right. The question of whether or not he pled guilty to an assault and battery, I don't believe that's pertinent. It may never been. But the question of whether or not he used that arm in a fracas, whether he was in the right or whether he was in the wrong, we are not trying that question. We are trying the question of his activity and the ability to use that arm at that time or did he use it. I think he could ask that question."

There followed a long colloquy between counsel for both parties and the court. It concerned what areas of evidence that might be explored regarding the ability of plaintiff to use his right arm, including the assertion by defendant that long continued shooting of craps could cause bursitis in the elbow. It was not disputed that, except for two very brief intervals, plaintiff had worked regularly for defendant since the occurrence of the latter of the two accidents made the basis of his claim against defendant. During the course of those proceedings in chambers the trial court, we think, made it abundantly clear to delineate those subjects of inquiry which he thought should be subject to *in-chambers* conference before counsel for defendant proceeded to develop them. Persistently during the trial, counsel eased into the forbidden subjects without seeking guidance of the court by in-chambers conference.

Thus we are presented with the necessity of determining whether the trial court properly exercised his discretion to grant a new trial to correct the jury verdict which he felt to have resulted from prejudicial, improper, extraneous influences finding their way into the jury box.

The principle to be followed in making the determination of the correctness of the trial court's action in ordering a new trial is well stated in Birmingham Baptist Hospital v. Blackwell, 221 Ala. 225, 128 So. 389:

"It is the generally accepted rule that it will constitute grounds for a new trial if counsel, in disregard of the court's ruling that a certain line of evidence is inadmissible, persists in attempting to get such evidence before the jury to the prejudice of the unsuccessful party. * * *" 221 Ala. at 228, 128 So. at 392.

More apt, perhaps, to the facts of the case before us, in light of the proceedings in chambers on the motion *in limine*, is the quote from Metropolitan Life Insurance Co. v. Carter, 212 Ala. 212, 102 So. 130, in Ritchey v. State, 293 Ala. 265, 302 So.2d 83:

"* * * It is clear to us that the trial judge was endeavoring to prevent the jury from being influenced by what he deemed to be an illegal inference from the testimony. To prevent a miscarriage of justice, it is always the duty of a trial judge to so conduct the trial as to see that extraneous influences do not find their way into the jury box. It has often been said:

"'* * * One of the highest functions of our courts, organized as they

are for the fair and impartial administration of justice, is "to prevent, as far as possible, all improper, extraneous influences from finding their way into the jury box." * * *' "

■ Were not the delineations by the trial court made on occasion of the colloquy during hearing of the motion *in limine* directed to insuring a trial free from prejudicial, improper, extraneous, influences finding their way into the jury box? Did not his granting of the motion for new trial stem from a well founded view that such had found their way into the jury box? We think the answer in both instances is in the affirmative.

The question here presented is not whether the remark "The young lady that you had the fracas with?" was so grossly improper and highly prejudicial that the · - plaintiff were prejudiced by it .ther, the question is whether this .. . .ical event in a series of deviations · · the guidelines previously laid down ; the trial court cumulatively tipped the bucket and let those improper, extraneous influences flow into the jury box. We do not think the trial judge abused his discretion in ordering a new trial. Gwin v. Church, 272 Ala. 674, 133 So.2d 880.

■ One other point deserves comment. Defendant insists that plaintiff was granted a new trial, without preserving error during the trial by objecting to the quoted remark. It urges that when counsel for plaintiff stated: "There, Judge, there. You can— * * * There you go, Judge, and we move for a mistrial if it please the court," and the trial court failed to rule on that motion there was no basis for ordering a new trial. This ignores the proceedings below in this particular case as well as the law. Indeed, just as it is the duty of the trial judge to so conduct the trial as to see that extraneous influences do not find their way into the jury box, likewise it is his duty to correct the result when it is determined by him that such did find

their way in and probably influence the verdict. Taylor v. Brownell-O'Hear Pontiac Co., 265 Ala. 468, 91 So.2d 828.

Much reliance is placed by defendant upon dictum in Alabama Great Southern Railroad Co. v. Gambrell, 262 Ala. 290, 78 So.2d 619. The language from *Gambrell* which defendant urges as a statement of one of the standards by which the correctness of the granting of a new trial should be measured is:

"* * * The fact that the verdict is not unjust is a material if not a decisiv factor in determining whether the new trial should be granted (Citations omitted)." 262 Ala. at 294, 78 So.2d at 621.

We think the test applied in Taylor v. Brownell-O'Hear Pontiac Co., supra, cited by plaintiff, is the one more appropriately applied to the situation presented by the case at bar. There the trial judge had granted a new trial on account of improper argument of counsel in connection with which this court went on to say:

"The trial judge was present and was in a position to observe the manner of counsel and the countenance and expressions of the jury and the things complained of which transpired. In other words, the trial court, in acting upon the motion, was in possession of data and circumstances· which are not and could not be presented by the record to this court. For this reason, we cannot disturb the conclusion reached unless we can say that it affirmatively appears from the great weight of the evidence and the surrounding facts and circumstances that this conduct did not influence the jury in the rendition of the verdict either as to result or amount. Thames v. Louisville & N. R. Co., 208 Ala. 255, 94 So. 487.

"It has long been a rule of law in this jurisdiction that the granting or refusing of a motion for a new trial is a matter resting largely in the discretion of the

trial court, and its order granting a new trial will not be disturbed on appeal unless some legal right of the appellant has been abused. There is a presumption that the court's discretion was properly exercised. The lower court will not be reversed unless the record plainly and palpably shows that the trial court was in error (Citations omitted)." 265 Ala. at 469, 91 So.2d at 829.

Moreover we quote with approval the language of this court in Johnson v. Hodge, 291 Ala. 142, 143, 279 So.2d 123:

" * * * However, granting or refusing a motion for new trial is a matter resting largely in the discretion of the trial court, and the exercise of this discretion carries with it a presumption of correctness. Shepherd v. Southern Ry. Co., 288 Ala. 50, 256 So.2d 883 (1970); State v. Edmundson, 282 Ala. 293, 210 So.2d 926 (1968); Grandquest v. Williams, 273 Ala. 140, 135 So.2d 391 (1961). Furthermore, on appeal from an order granting a new trial, the record must be construed against the appellant. King v. Scott, 217 Ala. 511, 116 So. 681 (1928). Therefore, an order granting a new trial will not be disturbed on appeal unless some legal right was abused and the record plainly and palpably shows that the trial court was in error. Shepherd v. Southern Ry. Co., 288 Ala. 50, 256 So.2d 883 (1970); Whitman v. Housing Authority of City of Elba, 272 Ala. 245, 130 So.2d 362 (1961). It has been said that an appellate court is even more reluctant to reverse an order granting a new trial than one denying a new trial. 58 Am.Jur.2d New Trial § 212, p. 433 (1971)."

We cannot say the record demonstrates plain and palpable error by the trial court in the exercise of its discretion granting a new trial, discretion wisely left to it. ConAgra, Inc. v. Masterson, 290 Ala. 273, 276 So.2d 134; State v. Oliver, 288 Ala. 32, 256 So.2d 866.

For the reasons enunciated the action of the trial court in granting a new trial is hereby affirmed.

Affirmed.

HEFLIN, C. J., and MERRILL, BLOODWORTH, MADDOX, FAULKNER, JONES, ALMON and SHORES, JJ., concur.