361 So.2d 356 (1978)
Louise FIELDS
v.
Sterling PARKER.
77-243.
Supreme Court of Alabama.
July 28, 1978.
*357 Wyman O. Gilmore, Grove Hill, for appellant.
Richard S. Manley, Demopolis, for appellee.
BEATTY, Justice.
The plaintiff appeals from an order granting a new trial or in the alternative a remittitur. We affirm.
The action was based upon a collision between the plaintiff's automobile which was struck from the rear by the defendant's truck. The plaintiff, a resident of Demopolis, alleged negligence on the defendant's part which proximately resulted in personal injuries. Trial ensued, and at the close of the evidence the defendant admitted liability, thus leaving the amount of damages as the sole issue for the jury's determination. The jury assessed damages at $22,000.00, and judgment was entered for that amount. A motion for a new trial or in the alternative a remittitur was filed assigning four grounds in support. Two of these grounds raised issues not material here, while the other two challenged the amount of the judgment as excessive. In due course the trial court entered the following order:
Defendant having moved for an Order pursuant to rule 59(a), A.R.C.P., for a new trial, and it appearing to the Court that the jury verdict of TWENTY-TWO THOUSAND ($22,000.00) DOLLARS is clearly excessive, it is hereby
ORDERED, that the motion for new trial is granted unless and until the Plaintiff shall remit SEVEN THOUSAND FIVE HUNDRED AND NO/100 ($7,500.00) DOLLARS of the judgment heretofore rendered.
The plaintiff contends that the trial court erred in granting this motion, in essence because it was an interference by the trial court into a matter, compensatory damages for physical pain and mental suffering, which is within the jury's prerogative, when there was absent clear abuse or passionate exercise by that body.
We have carefully reviewed the record in this case as well as the cases cited to us in the briefs of counsel for each party. The decisions relied upon by the plaintiff pertain to the restriction upon this Court when it reviews a decision of the trial court on the matter of his having granted or refused a new trial. Most of these recite the well established rule of our jurisdiction, that on its review this Court will not disturb a verdict as excessive when the trial court itself has refused to disturb the amount, unless in the view of this Court that amount is so excessive that it indicates passion, prejudice, corruption or mistake. Brandwein v. Elliston, 268 Ala. 598, 109 So.2d 687 (1959); Donald v. Matheny, 276 Ala. 52, 158 So.2d 909 (1963); Langdon v. Miller, 276 Ala. 195, 160 So.2d 479 (1964); Atlanta Life Ins. Co. v. Stanley, 276 Ala. 642, 165 So.2d 731 (1964); Stringfellow v. Rambo, 277 Ala. 349, 170 So.2d 494 (1965); Durham v. Sims, 279 Ala. 516, 187 So.2d 558 (1966); Alabama Power Co. v. Mosley, 294 Ala. 394, 318 So.2d 260 (1975). Some of these and other decisions allude to the strengthening of the presumption in the correctness of the verdict when the trial court has refused to grant a new trial. E. g., Clark v. Hudson, 265 Ala. 630, 93 So.2d 138 (1957); Jackson v. Brown, 49 Ala.App. 55, 268 So.2d 837 (1972); L. & N. R. Co. v. Phillips, 293 Ala. 713, 310 So.2d 194 (1975). Those cases demonstrate the difference in the positions occupied by the trial court, on the one hand, and this Court sitting in review of that court, on the other.
Historically, this Court has accorded the trial court a large measure of discretion, reviewable nevertheless, in determining whether to grant a new trial and in imposing conditions of remittitur upon that determination. Of that practice Montgomery Traction Co. v. Knabe, 158 Ala. 458, 48 So. 501, 504 (1909) furnishes an early recognition:
On motion to set aside a verdict on account of excessive damages, followed by the offer of the plaintiff to reduce the verdict to a certain amount, the trial *358 court, if of opinion that the plaintiff is entitled to recover, but that the judgment is excessive, may properly make such reduction of the verdict and enter judgment accordingly. Indeed, that such power and authority inhere in the trial court seems to be fully recognized by this court in the case of Richardson v. Birmingham Cotton Co., 116 Ala. 381, 22 So. 478. . . .
This Court has confirmed that discretion in a number of later decisions. E. g., Birmingham Electric Co. v. Thompson, 251 Ala. 465, 37 So.2d 633 (1948); Airheart v. Green, 267 Ala. 689, 104 So.2d 687 (1958); Central of Ga. R. Co. v. Steed, 287 Ala. 64, 248 So.2d 110 (1971).
The principle was explained by Mr. Justice Simpson in Birmingham Electric Co. v. Thompson at 251 Ala. 465, 466, 37 So.2d 633, 634:
Regrettably, from the standpoint of an appellate court seeking to appraise the correctness of the amount of the judgment appealed from, we are not advantaged as the jury and the trial judge were in observing the objective symptoms, such as the scars on the plaintiff's face, the deformity of the foot, and the cosmetic aspect of such injuries. We cannot foretell what future pain or suffering, also an element to be considered (15 Am.Jur. 483, § 73), might recur. Nor is there any yardstick to measure the amount of recompense which should be awarded for pain or mental suffering.
We must, perforce, rely upon the good judgment of the trial court, an able jurist of long experience, who was so advantaged and who reduced the judgment to the amount stated. On this point we must be impressed with his conclusion and, indeed, it has weight on review, and a favorable presumption as to its correctness is indulged. Thornton v. City of Birmingham, 250 Ala. 651, 35 So.2d 545(18); Birmingham Electric Co. v. Howard, 250 Ala. 421, 34 So.2d 830(6).
This position which recognizes the authority of the trial court in the matter of remittiturs coincides with his discretion in the matter of granting or refusing motions for new trials, the exercise of which is presumed on appeal to be correct in the absence of a showing in the record that the trial court was palpably in error.
That authority was the subject of Chief Justice Stone's opinion in White v. Blair, 95 Ala. 147, 10 So. 257 (1891). He wrote for the Court:
The rules for granting or withholding new trials after a verdict has been rendered are not always expressed in the same terms. Some courts give greater weight to the findings of a jury than others do, or, at least, they seem to do so. We are not inclined to adopt extreme views on either side of this question. We hold that no higher duty rests on a court of original jurisdiction than to assert his manhood, and grant, or refuse to grant, a new trial, as the merits of the controversy may point out his duty. Railroad Co. v. Powers, 73 Ala. 244. The case of Cobb v. Malone, 92 Ala. 630, 9 So. 738 . . . brought this statute [allowing the Supreme Court to grant new trials or to correct errors of the circuit courts in granting or refusing to grant new trials] before us for the first time. In that case, as in this, the main ground of the motion was that the verdict was contrary to the evidence. In that case the motion had been denied by the trial court, and we were asked to reverse his ruling. We gave the question careful consideration, and declared two rules, which we intended should become a guide and precedent. We said: `The decision of the trial court, refusing to grant a new trial on the ground of insufficiency of the evidence, or that the verdict is contrary to the evidence, will not be reversed, unless, after allowing all reasonable presumptions in favor of its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince the court that it is wrong and unjust.' When the lower court grants a new trial, and the appeal is from that ruling, we said the decision `will not be reversed unless the evidence plainly and palpably supports the verdict.' . . . *359 Accord, Johnson v. Hodge, 291 Ala. 142, 279 So.2d 123 (1973).
What did the record in this case disclose in the matter of the plaintiff's damages?
The plaintiff was injured when riding in the front seat of her 1970 Cadillac automobile which was being driven by someone else. Her car was struck from behind. Estimates of the damage to the automobile ranged from $600.00 to $2,600. She proved a total of $932.27 in medical expenses, broken down between $117.77 in drug bills and $814.50 in doctor's bills. There is some dispute regarding a bill for the cost of a rental car, $528.64; however the record shows that objection was sustained to proof of that item and it is not argued here.
The plaintiff's grandson, her driver at the time of the accident, testified to the nature of the impact. He was not wearing a seatbelt, but the force of the impact was not great enough to propel him into the windshield, or to throw him onto the floor, or to move him off of his seat. The force did push the car about fifteen feet up the highway and across the road. He testified that the plaintiff, as far as he knew, was still on her carseat after the accident. He drove the car home after the accident.
An investigating state trooper testified that after the accident he talked with the plaintiff in an antique store, and it was his opinion that she did not seem injured. When he inquired if there were any injuries the plaintiff made no statement.
The plaintiff testified to her age at the time of the accident, seventy-five, that she was injured about the neck and lower back, causing her pain just above her tailbone, that she had never had any problems with her back before the accident, never bothered with aches or pains, and could carry on her work and business, which consisted of farming, rentals and warehousing. She testified that since the accident, however, she was in severe pain, never free from it, took shots to relieve her back, and had been unable to carry on her normal duties. She had driven her car only once or twice since the accident, and could not continue to care for her invalid daughter who lived with her. She also testified that her social activities had been restricted because of the accident: "Well, I've not even been in my next door neighbor's house or the corner house either." She testified that she did ride to Mobile and back, and saw a little Mardi Gras parade, leaning against a car to watch it. She also rode over to Soho, Mississippi since the accident to attend an antique auction, and to Greensboro and Winterboro for the same purpose.
The plaintiff's daughter, Mary Fields, testified to the extensive physical assistance given to her by her mother before the accident, to the limitations upon her mother's physical activities since the accident, and to her mother's everyday complaints of pain.
The deposition of Dr. Reece Holifield, a physician, was read into evidence. He testified that the plaintiff had been his patent for approximately twenty years. According to Dr. Holifield, the plaintiff came to his office on the day of the accident, June 8, 1976, complaining of low back pain. An X ray of her pelvis was made. He subsequently examined her on June 29. She was complaining of a neck pain and low back pain. His examination revealed a paravertebral muscle spasm in the low back, with some areas of tenderness which he treated with injections. Upon a later examination on July 10 he administered injections and prescribed antispasmotic medication. On July 22, X rays of the lumbar spine disclosed severe osteoarthritis in the sacroiliac joint, and some degenerative arthritis in the cervical spine. On August 7 she was complaining of low back pain, with less severe neck pain. On August 18 her neck problems had improved but she continued to complain of "a lot of pain in her back." On September 9 she still had marked tenderness in her back, and complained of severe generalized weakness which her inability to rest at night probably caused. He saw her on October 4, complaining of pain in the posterior cervical muscles, on November 11 and November 16. He prescribed a skeletal muscle relaxant. When he saw her on December 9 she complained of her back aching all night. He found her mentally depressed.
*360 He prescribed Retilin and Dalmane, a muscle relaxant-type sleeping medication. He conversed with the plaintiff by telephone on December 28 and prescribed a pain medication with a sedative. On January 27, 1977 she had ultra sound treatments on her back. Then on February 22 her back was injected with a local anesthetic and a steroid drug. On February 15 and 23 she had ultra sound treatments, as she did on March 10 and April 2. When she visited on April 26 she had a urinary tract infection. On May 7 she was given an injection for an arthritis-type condition. At that time she was not complaining as vigorously as before, but on May 28 her complaints renewed and she was given an injection. She was seen on June 13 and 20 about a rash, probably the result of some medication. On August 2 she was seen complaining about her back and physical weakness. He administered medication for depression and steroids for her back. He repeated the steroids on August 29.
When asked whether the plaintiff had any permanent disability with respect to her back, he testified that her X-rays showed "rather severe degenerative arthritis or osteoarthritis, which is the wear and tear arthritis that all of us will get as we get older." Previous to this time (June 8, 1976) I don't remember ever treating her for any back pain or problems. I think her main problem is that she has had some aggravation of a pre-existing condition and she continues to have . . . a lot of problems with her back." He added that she had made a good recovery with regard to her neck, but continued to complain vigorously about her low back, with the pain keeping her awake and keeping her from her needful activities. He noted a continuation of marked tenderness in her back and muscle spasm. It was his opinion that since June 8, 1976 until he saw her last she had not been able to carry out her normal duties, almost one hundred percent physically impaired for that period of time.
After the plaintiff rested, the defendant called several witnesses who testified that they had associated with the plaintiff since the accident. One witness had driven the plaintiff to the doctor's office, the grocery store, an antique shop, and to her lawyer's office about fifteen times since February, 1977. This witness and her husband drove the plaintiff on a one-day trip to Soho, Mississippi, a distance of around 140 miles from Demopolis. They attended an antique auction which lasted about five hours, and they returned to Demopolis early the next morning, the entire trip having taken around nine hours. They also drove the plaintiff to antique auctions in Greensboro and Winterboro, Alabama. They would leave around one o'clock (p. m.) and return around two o'clock (a. m.). They drove to Mobile in February for one day during Mardi Gras, and while there visited an antique shop before witnessing a two o'clock (p. m.) parade. This witness testified that she had seen the plaintiff driving her automobile on more than one occasion in Demopolis within the past six months. She added that she had heard the plaintiff complain of pain.
At bottom, the question we must decide is whether under this evidence the trial court properly made a reduction of the verdict as a condition for denying a new trial. Richardson, supra. On this record we cannot state that his discretion was abused. We have no yardstick with which to measure the proper amount of damages which should equate pain and suffering, nor is there any litmus test useful in determining their extent. Admittedly, this plaintiff has sustained physical aggravations aside from her other special damages. The extent to which they have been imposed by this accident, and the extent to which they have affected her physical condition have been, and are, properly subjects for the jury's consideration, Durham v. Sims, supra, subject, of course, to the trial court's review. Granting the presumption to which his action is entitled, Steed, supra, we are also conscious of the fact that his decision to reduce the verdict or set it aside has involved his judgment based upon his observation of all of the witnesses who testified, his consideration of all of the evidence, and his awareness of the other incidents of the trial, "[all of] which cannot be reflected in *361 the transcript and which are not available for observation by us." Airheart, supra; Luquire Funeral Homes Ins. Co. v. Turner, 235 Ala. 305, 178 So. 536 (1938). In sum, upon examination of the entire record we cannot state that the trial court's reduction of the jury's award from $22,000.00 to $14,500.00 represents a plain and palpable error, regardless of our own beliefs regarding any sum to which the plaintiff might have been entitled.
Accordingly, the judgment must be affirmed and it is so ordered.
AFFIRMED.
TORBERT, C. J., and MADDOX and SHORES, JJ., concur.
JONES, J., concurs in the result.
JONES, Justice (concurring in the result):
While I still hold to the view expressed in my dissenting opinion in Hubbard Bros. Construction Company, Inc. v. C. F. Halstead Contractor, Inc., 294 Ala. 688, 321 So.2d 169 (1975), I concede that the result reached by the majority opinion is the settled law on motions for new trial in the factual context of this case.