441 So.2d 889 (1983)
David R. TODD
v.
UNITED STEELWORKERS OF AMERICA, AFL-CIO-CLC, an unincorporated association.
81-1063.
Supreme Court of Alabama.
November 18, 1983.
*890 Paul D. Myrick and Joseph F. Danner, of Darby & Myrick, Mobile, and Robert A. Wills, Bay Minette, for plaintiff.
William E. Mitch and Frederick T. Kuykendall, III, of Cooper, Mitch & Crawford, Birmingham, and Kenneth Cooper, Bay Minette, for defendant.
BEATTY, Justice.
The plaintiff appeals from an order granting a new trial, or, in the alternative, a remittitur. We affirm.
A strike by union employees of Den-Tal-Ez Manufacturing Company, represented by United Steelworkers of America (defendant), began on February 3, 1978. In his original complaint filed February 9, 1978, David Todd (plaintiff), an employee of Den-Tal-Ez who continued to work despite the strike, sought $10,000 compensatory damages and $100,000 punitive damages, claiming to have suffered property damage and mental anguish as a result of the alleged unlawful attempts by United Steelworkers to prevent, and conspiracy to prevent, employees from continuing to work during the strike. In March 1982, three years after filing his original complaint, Todd amended his complaint, thereby increasing his claim for punitive damages from $100,000 to $2,000,000. Trial ensued, and the jury returned a verdict for Todd in the amount prayed for: $10,000 compensatory damages and $2,000,000 punitive damages. Judgment was entered for that amount.
United Steelworkers filed a motion for judgment notwithstanding the verdict or, in the alternative, a new trial, assigning six grounds of support. Four of these grounds raised issues not material here, while the other two grounds challenged the amount of the judgment as excessive and contrary to the evidence, and, as such, as having *891 been given by a jury influenced by passion and prejudice. In due course, the trial court entered the following order:
"This cause came on to be heard on motion by Defendant for a New Trial or in the Alternative, a Judgment Notwithstanding the Verdict on the ground, among others, that the damages awarded by the Jury herein, are excessive, and the Court having heard the argument of counsel finds the verdict rendered by the Jury to be excessive by the amount of $1,983,869.00. It is therefore;
"ORDERED, ADJUDGED and DECREED that the Defendant's Motion for a New Trial, be and it hereby is, Granted, unless within 21 days after this date, the Plaintiff files with the Clerk of this Court a written instrument remitting all damages in excess of $26,131.00 and agreeing to a reduction of judgment to $26,131.00 together with all costs, in which event the Motion for a New Trial is in all respects, Denied."
Todd contends that the trial court abused its discretion in granting United Steelworkers' motion, in essence, because denial of the motion was conditioned on agreement by the plaintiff to a substantial remittitur of the damages assessed by the jury, and the method by which the trial court arrived at the remittitur was improper.
The threshold issue to be decided by this Court is whether the method by which the plaintiff has attempted to supplement the record on appeal is procedurally correct under Rule 10 of the Alabama Rules of Appellate Procedure. In his brief, plaintiff has included the affidavit of one of his counsel at trial in which the affiant attempts to relate, from his recollection, the unreported and in camera proceedings and statements made by the trial court during the hearing on defendant's motion for a new trial. The plaintiff asks that this affidavit be made part of the record on appeal pursuant to Rule 10(f), A.R.A.P., which provides:
"(f) Correction or modification of the record. If any difference arises as to whether the record truly discloses what occurred in the trial court, the difference shall be submitted to and settled by that court and the record made to conform to the truth. If anything material to either party is omitted from the record by error or accident or is misstated therein, the parties by stipulation, or the trial court either before or after the record is transmitted to the appellate court, or the appellate court, on proper suggestion or of its own initiative, may direct that the omission or misstatement be corrected, and if necessary that a supplemental record be certified and transmitted...." (Emphasis supplied.)
It is clear from the language in Rule 10(f) that it was intended to apply in situations where there were omissions from the record by error or accident, or misstatements in the record. Although none of these specified reasons applies in the present case, the plaintiff does not offer any rationale for his attempt to supplement the record by way of Rule 10(f).
The defendant, in brief, has objected to the plaintiff's attempt to use Rule 10(f) to supplement the record on appeal. As counsel for the defendant point out, Rule 10(d), A.R.A.P., is the appropriate rule with which plaintiff must comply in order to supplement the record when no report of the proceedings was made. This rule carefully fixes the procedure and time limits that must be followed in order to effect such supplementation:
"(d) Statement of the evidence or proceedings when no report was made or when the transcript is unavailable. If no report of the evidence or proceedings at hearing or trial was made, or if a transcript is unavailable, the appellant may prepare a statement of the evidence or proceedings from the best available means, including his recollection. The statement shall be served within 49 days (seven weeks) after notice of appeal on the appellee, who may serve objections or proposed amendments thereto within seven days (one week) after service. Thereupon the statement and any objections or proposed amendments shall be submitted *892 to the trial court for settlement and approval and as settled and approved shall be filed with and included by the clerk of the trial court in the record on appeal."
The plaintiff has failed to comply with the procedures set out in Rule 10(d); and, therefore, the affidavit, which the plaintiff has included and relied upon in his brief, is not properly before this Court and cannot be considered as part of the record on appeal.
The remaining issue to be decided is whether the trial court abused its discretion in granting a new trial, conditioned on a remittitur by the plaintiff of $1,983,869.
The trial court is accorded a large measure of discretion in determining whether to grant a new trial and imposing conditions of remittitur upon that determination. Fields v. Parker, 361 So.2d 356, 357 (Ala.1978); Airheart v. Green, 267 Ala. 689, 104 So.2d 687 (1958); Birmingham Electric Co. v. Thompson, 251 Ala. 465, 37 So.2d 633 (1948). This practice is recognized in Rule 59(f), A.R.Civ.P.:
"(f) Remittitur. The court may, on motion for new trial, require a remittitur as a condition to the overruling of the motion for new trial;..."
This Court has stated that when the trial court exercises its discretion in making this determination its action on appeal is presumed to be correct. Mr. Justice Simpson explained this principle in Birmingham Electric Co. v. Thompson, supra:
"Regrettably, from the standpoint of an appellate court seeking to appraise the correctness of the amount of the judgment appealed from, we are not advantaged as the jury and the trial judge were in observing the [trial of the case].... Nor is there any yardstick to measure the amount of recompense which should be awarded for ... mental suffering.
"We must, perforce, rely upon the good judgment of the trial court, an able jurist of long experience, who was so advantaged and who reduced the judgment to the amount stated. On this point we must be impressed with his conclusion and, indeed, it has weight on review, and a favorable presumption as to its correctness is indulged. Thornton v. City of Birmingham, 250 Ala. 651, 35 So.2d 545(18); Birmingham Electric Co. v. Howard, 250 Ala. 421, 34 So.2d 830(6)." 251 Ala. at 466-467, 37 So.2d 633.
The above principle recognizes that in order to decide an abuse of discretion issue on appeal this Court must review the trial court's judgment, which was necessarily based upon its observation of all the witnesses who testified in the case, and other incidents of trial which cannot be reflected in the record and which are not available for observation by this Court. Airheart v. Green, supra.
Therefore, this presumption of correctness will apply in the absence of a showing in the record that the trial court was palpably in error. Consequently, where the trial court finds that the jury's verdict is so excessive as to indicate that it resulted from bias, passion, prejudice, corruption, or other improper motive, and thereby denies a new trial conditioned upon the plaintiff's filing of a remittitur of a specified amount of the damages awarded by the jury, the trial court's ruling will not be reversed, unless, after allowing all reasonable presumptions in favor of its correctness, the preponderance of the evidence in favor of the verdict is so decided as to clearly convince this Court that the trial court's determination is wrong and unjust. And if the decision of the trial court was simply to grant a new trial, and the appeal is from that ruling, the decision will not be reversed unless the evidence plainly and palpably supports the verdict. Airheart v. Green, supra; Cobb v. Malone, 92 Ala. 630, 9 So. 738 (1891). Accord, Fields v. Parker, supra; Johnson v. Hodge, 291 Ala. 142, 279 So.2d 123 (1973); White v. Blair, 95 Ala. 147, 10 So. 257 (1891).
A review of the record of this case fails to disclose that the trial court abused its discretion in granting the defendant a new trial conditioned on plaintiff's remittitur of a substantial portion of the damages.
*893 The plaintiff sought compensatory damages in the amount of $10,000 for property damage and mental anguish suffered as a result of actions taken and threats made by certain striking members of United Steelworkers. At trial, plaintiff proved actual damages of $131, which was the cost to repair a rear window in his van that was broken by a brick alleged to have been thrown by one of the picketing steelworkers. Plaintiff further testified that he was made nervous and upset by verbal threats and insults directed toward him as he crossed the picket line each day to go to work. In addition, Todd took protective measures, which he felt were necessary, in order to prevent suffering any further damages. These steps included installing flood lights around his home, checking for and removing nails and tacks placed beneath his tires in the driveway, and putting up a sheet of plywood on the front of a large window in his living room. Although the strike lasted approximately five months, the plaintiff did not miss any days from work as a result of defendant's conduct.
During the course of the trial, the trial court admitted, often over objection by the defense, relevant, yet otherwise immaterial, evidence of prior and subsequent acts of violence and vandalism alleged to have been committed by striking members of United Steelworkers against other Den-Tal-Ez employees who continued to work during the strike, of which the plaintiff had knowledge. This evidence was admitted apparently for the limited purpose of corroborating the extent of the plaintiff's mental anguish and the measures he had taken as a result thereof. Although this evidence was admitted, only one limiting instruction was given to the jury, and it was given only after the defendant had moved for a mistrial, and only to the effect that the jury should disregard answers that were not responsive to questions. The jury was not given a limiting charge with regard to this evidence at the close of the trial.
In addition to his claim for compensatory damages, the plaintiff sought $2,000,000 in punitive damages. Therefore, the jury should have assessed these damages based on their determination of the enormity of the wrong inflicted upon the plaintiff, together with the necessity of preventing a similar wrong from being committed in the future. Liberty National Life Ins. Co. v. Weldon, 267 Ala. 171, 100 So.2d 696 (1957). Accord, Mid-State Homes, Inc. v. Johnson, 294 Ala. 59, 311 So.2d 312 (1975).
It is clear that the trial court cannot order a remittitur or a new trial merely because, in its opinion, the jury gave the plaintiff too much. Airheart v. Green, supra; Shiloh Construction Co. v. Mercury Construction Corp., 392 So.2d 809 (Ala. 1980). In determining that the jury verdict here was excessive and thus contrary to the evidence, it is indeed conceivable that the trial court believed the excessive verdict was an indication that the jury was prejudiced by the aforementioned evidence of other alleged bad acts by the defendant, or that the jury was biased, or had an otherwise improper motive. The trial court's acting on such a belief is clearly not an abuse of discretion.
Furthermore, in his reply brief, plaintiff makes the bare allegation that it is evident from an examination of the figures themselves, i.e. the amount of the jury verdict and the amount of the proposed judgment after the remittitur, that the trial court employed an arbitrary mathematical formula in arriving at the remittitur, and therefore committed a manifest abuse of its discretion. There is, however, no evidence in the record to support this allegation, and the numbers do not prove, on their face, that the trial court abused its discretion by applying a formula to determine the amount of damages that should be remitted.
Indeed, "remittiturs ... are favored ... in proper cases, for the promotion of justice and the ending of litigation." Cook & Laurie Contracting Co. v. Bell, 177 Ala. 618, 635, 59 So. 273, 279 (1912). It is important to reiterate that the trial judge's decision to reduce or set aside the jury's verdict "involved his judgment based upon his observation *894 of all the witnesses who testified, his consideration of all the evidence, and his awareness of the other incidents of the trial, `[all of] which cannot be reflected in the transcript and which are not available for observation by us.' Airheart, supra; Luquire Funeral Homes Ins. Co. v. Turner, 235 Ala. 305, 178 So. 536 (1938)." Fields v. Parker, supra, 361 So.2d at 360-61.
Upon examination of the entire record, and granting the presumption to which its action is entitled, it cannot be stated that the trial court's denial of a new trial conditioned on a remittitur of $1,983,869 was a plain and palpable error and manifest abuse of discretion, "regardless of [this Court's] beliefs regarding any sum to which the plaintiff might have been entitled." Fields v. Parker, supra, 361 So.2d at 361.
Accordingly, under the authorities cited, the judgment is affirmed.
AFFIRMED.
MADDOX, FAULKNER, ALMON, SHORES, EMBRY and ADAMS, JJ., concur.
TORBERT, C.J., and JONES, J., dissent.
JONES, Justice (dissenting):
I respectfully dissent. The propriety of a trial court's order of a substantial (here, perhaps, more accurately described as radical) remittitur of a jury's award of damages presents one of the most difficult issues for appellate review. Because there is no cross-appeal in this case, the factual resolution by the jury stands unchallenged. The Defendant was found guilty of inflicting intentional injury on the Plaintiffthe highest degree of culpable conduct known to the law of torts. It is not the $10,000 award of compensatory damages that is questioned, of course; rather, it is the $2 million award of punitive damages that presents a serious problem. By almost any reasonable subjective standard, this award is too high. The trial judge properly exercised his discretion to reduce it. By some unexplained method, he reduced the total award to $26,131. The $131 represented the physical property loss; but this amount was included within the jury's award of $10,000 compensatory damages. Does this, plus the size of the remittitur ordered, render the trial court's action an abuse of discretion as being totally arbitrary? And by what standard do we answer that question?
It is not a question of this Court's authority to alter the award as reduced by the trial court; rather, it is a question of should we alter it, and, if so, by what amount, using what yardstick? These are tough questions, but answering them is what we "hired on" for.
Personally, I feel that the jury verdict was excessive; but the amount by which the verdict was ruled excessive by the trial court was also excessive. I think we should have sought a consensus on this Court as to the appropriate award and thus given the Plaintiff the option to remit accordingly or suffer a new trial. I would have voted for leaving the jury's verdict of $10,000 for compensatory damages undisturbed and ordering a remittitur of $1,900,000 as to the punitive damages portion of the verdict, thus reducing the total award to $110,000.
TORBERT, C.J., concurs.